993 A.2d 655

**Isaac E. DALLAS.**

v.

**STATE of Maryland.**

**No. 17 Sept.Term, 2009.**

Court of Appeals of Maryland.

April 26, 2010.

Geraldine K. Sweeney, Chief Atty. (Nancy S. Forster, Public Defender, Baltimore, MD), on brief for Petitioner.

Jessica V. Carter, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief for Respondent.

ARGUED BEFORE BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

BARBERA, Judge.

Petitioner Isaac E. Dallas was convicted of possession of cocaine with the intent to distribute that controlled dangerous substance and related offenses. During trial, Petitioner sought a ruling concerning whether the court would permit the State, under Maryland Rule 5–609,[1] to impeach him with two felony drug convictions if he testified. The court decided

---

1. Maryland Rule 5–609 provides:
    (a) For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record during

that any ruling concerning the admissibility of such evidence must await Petitioner's direct testimony, if any. Petitioner elected not to testify.

Petitioner contends that the court's deferral of its ruling on the admissibility of the impeachment evidence impermissibly chilled his right to make a free election to testify or remain silent. This, Petitioner claims, was an abuse of the court's discretion, entitling him to a new trial. For the reasons that follow, we hold that, under the circumstances of this case, the court did not abuse its discretion in deferring its ruling until after Petitioner testified.

## I.

The genesis of this case was a traffic stop of a car in which Petitioner was riding. During a search of Petitioner at the scene of the stop, the police found a clear plastic bag containing marijuana and crack cocaine. When the police advised Petitioner that he was under arrest, he said: "I'm a three-time loser and I'm facing 25 years. Can't you say you just found the stuff on the ground?"[2]

---

examination of the witness, but only if (1) the crime was an infamous crime or other crime relevant to the witness's credibility and (2) the court determines that the probative value of admitting this evidence outweighs the danger of unfair prejudice to the witness or the objecting party.

(b) Time limit. Evidence of a conviction is not admissible under this Rule if a period of more than 15 years has elapsed since the date of the conviction.

(c) Other limitations. Evidence of a conviction otherwise admissible under section (a) of this Rule shall be excluded if:
  (1) the conviction has been reversed or vacated;
  (2) the conviction has been the subject of a pardon; or
  (3) an appeal or application for leave to appeal from the judgment of conviction is pending, or the time for noting an appeal or filing an application for leave to appeal has not expired.

(d) Effect of plea of nolo contendere. For purposes of this Rule, "conviction" includes a plea of nolo contendere followed by a sentence, whether or not the sentence is suspended.

2. Petitioner filed a motion to suppress the drugs and statement as the fruits of an unlawful stop and search. Petitioner did not appeal the trial court's denial of that motion.

The State later charged Petitioner in the Circuit Court for Harford County with possession of marijuana, possession of cocaine, and possession with intent to distribute cocaine. Petitioner filed a pre-trial motion *in limine* to preclude the State from presenting evidence of the portion of the above-mentioned statement in which he said, "I'm a three-time loser and I'm facing 25 years." The trial court granted the motion and precluded the State from using in its case-in-chief any evidence of Petitioner's "prior bad acts or convictions or admissions that relate directly to the crime[s] charged." The court reserved its ruling on whether the State would be permitted to use Petitioner's statement and prior convictions to impeach his credibility.

Petitioner made clear during his opening statement his theory of defense against the felony charge. Petitioner, through counsel, conceded that he possessed both marijuana and cocaine at the time in question but denied that he possessed the cocaine with the intent to distribute it. Following the State's case, defense counsel sought a ruling that the State be prohibited from impeaching Petitioner with his prior convictions of distribution and possession of cocaine with the intent to distribute that substance. The court concluded that the evidence of those convictions was relevant to Petitioner's credibility and ruled the evidence admissible for impeachment purposes.[3] Petitioner elected not to testify.

Following a short recess, but before the jury returned to the courtroom, the court rescinded its ruling. The court explained its reasoning:

> Counsel, I was thinking after I left the courtroom, that I may have been precipitous in my ruling to permit impeachable offenses. The reason being is that there is a balancing

---

3. Petitioner, by not arguing to the contrary, evidently acknowledged that the prior convictions satisfied the requirements of Rule 5–609(a) and (b): that no more than fifteen years had elapsed between the date of the convictions and trial and that each conviction was for an infamous crime or other crime relevant to the witness's credibility.

test that has to be made, and I made perhaps an assumption that I should not have made.

In making that decision, I have to consider the impeachable balance of the prior crime, the impeachable value of the prior crime. The relevance of the conviction, the witness' subsequent history, the importance of the witness' credibility to the case, and the risk of unfair prejudice.

We really didn't get into a couple of those elements, No. 1; and No. 2, I made the assumption as to the importance of the witness' credibility, something that I really can't make at this juncture.

He hadn't said anything. I was assuming—I really don't know what he's going to say, and therefore, I should not have indicated. I should not have ruled that the risk of unfair prejudice did not outweigh the probative value. I'm going to reverse my ruling. My ruling was precipitous. I think the proper procedure in this case is only to make a ruling after your client testifies and before there's any cross-examination to make the decision and to apply the balance of [sic] test in this case.

So I'm reversing my ruling. I make no finding at this point as to whether or not the probative value of the prior convictions outweighs any unfair prejudice to your client. I think you need to, upon that basis, re-qualify your client at this juncture, [defense counsel], and my prior ruling is no indication of what it may be. I need to hear what he has to say.

The court instructed defense counsel to re-qualify his client. During that colloquy, Petitioner asked: "So he [the prosecutor] can use—it all depends on what I say?" The court responded: "Depends on what you say, and depends on whether or not how important your credibility is going to be. I don't know until you say it. That's my problem. I'm going to have to consider what you say and then make a decision. I think that's the proper procedure[.]"

After further discussion, the State suggested that the defense be permitted to proffer Petitioner's testimony. The

court rejected the State's suggestion, stating that the court "need[ed] to hear the actual testimony" before ruling.

The judge then asked Petitioner if he wished to testify. He responded that he did not. The court asked Petitioner if he was sure of that decision, "knowing the fact that there is a possibility that I might rule to your favor and not permit impeachable offenses?" and "knowing the fact that I have already said that I do recognize there's a high risk of unfair prejudice?" Petitioner again stated that he did not wish to testify. Defense counsel did not object to any aspect of the court's decision to defer its ruling on the admissibility of the State's proposed impeachment evidence, nor did counsel argue that the court's deferral of its ruling on the admissibility of impeachment evidence chilled Petitioner's right to make a free election. The defense rested without putting on any evidence. The jury convicted Petitioner of all three charged offenses.

## The Appeal

Petitioner raised a single issue on appeal to the Court of Special Appeals: "Did the trial court err in refusing to rule on the admissibility of prior convictions under Md. Rule 5–609 until after Appellant completed his direct testimony before the jury?" The State countered that Petitioner, by opting not to testify, did not preserve his challenge to the court's decision to await his direct testimony before ruling on the admissibility of the State's proposed impeachment evidence. The State further argued that, even if Petitioner's claim was preserved for review, the trial court did not abuse its discretion in deferring its ruling until after Petitioner testified on direct.

The Court of Special Appeals affirmed the convictions, holding in an unreported opinion that Petitioner failed to preserve the claim for review because he decided not to testify. The court therefore did not address whether the trial court abused its discretion in deferring its ruling on the admissibility of the evidence of Petitioner's prior convictions.

We granted Petitioner's petition for writ of certiorari to answer the following question: "Did the trial court err in

refusing to rule on the admissibility of prior convictions under Md. Rule 5–609 until after [Petitioner] completed his direct review testimony before the jury?" *Dallas v. State,* 407 Md. 529, 967 A.2d 182 (2009).

## II.

■ Before discussing the merits of the question on which we granted review, we must address the parties' dispute concerning whether Petitioner's decision not to testify forecloses his challenge to the trial court's deferral of its Rule 5–609(a) ruling. The State relies, as it did in the Court of Special Appeals, on *Luce v. United States,* 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984), and *Jordan v. State,* 323 Md. 151, 158–59, 591 A.2d 875, 878–79 (1991), which applied the *Luce* rationale in a related context. Petitioner counters that the rationale of *Luce* and *Jordan* does not apply to the claim he has raised in this appeal.[4] To resolve the parties' disagreement we must undertake a somewhat detailed examination of those and other cases on the subject.

In *Luce,* the defendant Luce, who faced charges of conspiracy and possession of cocaine with intent to distribute, sought by way of a pre-trial motion *in limine* to preclude the government from impeaching him with evidence of his prior conviction for possession of a controlled substance. The District Court denied the motion, ruling that, although evidence of the prior conviction constituted permissible impeachment evidence under Federal Rule of Evidence 609(a), "the nature and scope of [Luce's] trial testimony could affect the court's specific evidentiary rulings." 469 U.S. at 40, 105 S.Ct. at 462,

---

4. Petitioner did not present in his petition for writ of certiorari a separate question challenging the holding of the Court of Special Appeals that he did not preserve the issue. The State argues that, as a consequence of not presenting that question, Petitioner cannot now assert that the Court of Special Appeals erred in holding that the question on which we granted certiorari is not preserved for appellate review. We shall address the non-preservation issue, as it is closely tied to the merits of the question on which we granted certiorari review.

83 L.Ed.2d at 446. The District Court added that it "was prepared to hold that the prior conviction would be excluded if [Luce] limited his testimony to explaining his attempt to flee from the arresting officers. However, if [Luce] took the stand and denied any prior involvement with drugs, he could then be impeached by the [prior] conviction." *Id.*, 105 S.Ct. at 462, 83 L.Ed.2d at 446–47. Luce opted not to testify, and the jury returned guilty verdicts. *Id.*, 105 S.Ct. at 462, 83 L.Ed.2d at 446–47.

The United States Court of Appeals for the Sixth Circuit affirmed. That court "refused to consider [Luce's] contention that the District Court abused its discretion in denying the motion *in limine* without making an explicit finding that the probative value of the prior conviction outweighed its prejudicial effect." *Id.*, 105 S.Ct. at 462, 83 L.Ed.2d at 447. The Court of Appeals held that, "when the defendant does not testify, the court will not review the District Court's *in limine* ruling." [5] *Id.*, 105 S.Ct. at 462, 83 L.Ed.2d at 447.

The Supreme Court affirmed. The Court identified several reasons why Luce's decision not to testify made it impossible to have meaningful appellate review of the trial court's *in limine* ruling. First,

> a reviewing court is handicapped in any effort to rule on subtle evidentiary questions outside a factual context. This is particularly true under Rule 609(a)(1), which directs the court to weigh the probative value of a prior conviction against the prejudicial effect to the defendant. To perform this balancing, the court must know the precise nature of the defendant's testimony, which is unknowable when, as here, the defendant does not testify.

*Id.* at 41, 105 S.Ct. at 463, 83 L.Ed.2d at 447. "Requiring a defendant to make a proffer of testimony is no answer; his

---

**5.** The *Luce* Court used the term *in limine* "in a broad sense to refer to any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." 469 U.S. at 40 n. 2, 105 S.Ct. at 462 n. 2, 83 L.Ed.2d at 447 n. 2. We shall do the same in this opinion.

trial testimony could, for any number of reasons, differ from the proffer." *Id.* at 41 n. 5, 105 S.Ct. at 463 n. 5, 83 L.Ed.2d at 447 n. 5.

Second, "[a]ny possible harm flowing from a district court's *in limine* ruling permitting impeachment by a prior conviction is wholly speculative. The ruling is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the defendant's proffer." *Id.* at 41, 105 S.Ct. at 463, 83 L.Ed.2d at 447. Further, a trial court possesses the discretion to alter its *in limine* ruling after hearing the testimony, even if "nothing unexpected happens at trial." *Id.,* 105 S.Ct. at 463, 83 L.Ed.2d at 448. Moreover, without the defendant's testimony, "it would be a matter of conjecture whether the District Court would have allowed the Government to attack petitioner's credibility at trial by means of the prior conviction[,]" and whether "the Government would have sought to impeach with the prior conviction." *Id.* at 42, 105 S.Ct. at 463, 83 L.Ed.2d at 448.

Third, a defendant's decision whether to testify is essentially a matter of trial strategy, which "seldom turns on the resolution of one factor." *Id.,* 105 S.Ct. at 463, 83 L.Ed.2d at 448 (internal quotation marks and citations omitted). A reviewing court, therefore, cannot properly assume that the trial court's ruling on the motion *in limine* motivated the defendant's decision not to testify.

Fourth, "[e]ven if these difficulties could be surmounted, the reviewing court would still face the question of harmless error." *Id.,* 105 S.Ct. at 463, 83 L.Ed.2d at 448. The Court explained:

Were *in limine* rulings under Rule 609(a) reviewable on appeal, almost any error would result in the windfall of automatic reversal; the appellate court could not logically term "harmless" an error that presumptively kept the defendant from testifying. Requiring that a defendant testify in order to preserve Rule 609(a) claims will enable the reviewing court to determine the impact any erroneous impeachment may have had in light of the record as a

whole; it will also tend to discourage making such motions solely to "plant" reversible error in the event of conviction. *Id.,* 105 S.Ct. at 463–64, 83 L.Ed.2d at 448.

For all of those reasons, the *Luce* Court held "that to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify." *Id.* at 43, 105 S.Ct. at 464, 83 L.Ed.2d at 448. In doing so, the Court rejected Luce's reliance on two earlier decisions, *New Jersey v. Portash,* 440 U.S. 450, 99 S.Ct. 1292, 59 L.Ed.2d 501 (1979), and *Brooks v. Tennessee,* 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972), for the proposition that electing not to testify did not preclude Luce from challenging the District Court's *in limine* ruling. The Court explained that, in *Brooks* and *Portash,* the Court had "reviewed *Fifth Amendment* challenges to state-court rulings that operated to dissuade defendants from testifying. We did not hold that a federal court's preliminary ruling on a question not reaching constitutional dimensions—such as a decision under Rule 609(a)—is reviewable on appeal." [6] *Luce,* 469 U.S. at 42–43, 105 S.Ct. at 464, 83 L.Ed.2d at 448 (emphasis in original).

We adopted the non-preservation rationale of *Luce* in *Jordan,* 323 Md. at 158–59, 591 A.2d at 878. In that case, the trial court ruled before trial that Jordan's statement to the police, though voluntary, was obtained without a proper waiver of the *Miranda*[7] right to counsel. The trial court further

---

6. In *Portash,* the state trial court ruled on a motion *in limine* that Portash could be impeached with grand jury testimony that he had given under a statutory grant of immunity. Portash did not testify. The Supreme Court reached the merits of Portash's challenge to the ruling because the state appellate court had done so. 440 U.S. at 454–55, 459–60, 99 S.Ct. at 1294–95, 1297, 59 L.Ed.2d at 507, 510.

In *Brooks* the Court was presented with the question whether a Tennessee statute requiring a defendant in a criminal case to testify first in the defense case, or forego the opportunity to testify at all, violated the Constitution. The Court did not address whether Brooks's decision not to testify affected the Court's ability to decide the question presented. 406 U.S. at 612, 92 S.Ct. at 1895, 32 L.Ed.2d at 364.

7. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

ruled that the statement could not be used in the State's case-in-chief but, "when and if Jordan took the stand [at trial], his statement could only be used for the purpose of impeachment." 323 Md. at 154, 591 A.2d at 876. The court denied defense counsel's request to reconsider the voluntariness ruling. Thereafter, Jordan elected not to testify and was convicted on charges of murder and related offenses.

On appeal Jordan challenged, among other things, the court's ruling that the statement was voluntary. The Court of Special Appeals, relying in part on *Luce*, held that Jordan did not preserve the issue for appellate review because he chose not to testify. *See Jordan v. State*, 82 Md.App. 225, 231, 571 A.2d 238, 241 (1990), *aff'd in part, rev'd in part*, 323 Md. 151, 591 A.2d 875 (1991).

We affirmed that aspect of the judgment of the Court of Special Appeals. *Jordan*, 323 Md. 151, 591 A.2d 875. Like the intermediate appellate court, we were guided by the rationale underpinning the holding of *Luce*. We stated: "Although *Luce* involved the issue of impeachment by prior conviction rather than a ruling grounded on the constitutional right not to be impeached with an involuntary confession, we are persuaded that its reasoning is applicable in the instant case." *Id.* at 159, 591 A.2d at 878. Accordingly, we held that the challenge to the court's decision to admit Jordan's confession for impeachment purposes was not preserved for appellate review because Jordan did not testify. *Id.* at 158–59, 591 A.2d at 878.

Petitioner acknowledges the continued viability of *Jordan* and its reliance on *Luce*. He nevertheless argues that those cases are inapplicable.[8] He points out that, unlike the petitioners in *Luce* and *Jordan*, he does not challenge an *in limine* ruling; rather, he challenges the court's decision not to

---

**8.** Petitioner also urges us to overrule *Jordan* to the extent that it adopts the *Luce* non-preservation rationale. Because we hold, *infra*, that the *Luce/Jordan* non-preservation rationale does not apply to the present case, we do not consider Petitioner's suggestion that we overrule *Jordan*.

make such a ruling before he elected whether to testify. In that regard, Petitioner argues, his case closely resembles *Williams v. State*, 110 Md.App. 1, 675 A.2d 1037 (1996).

In *Williams*, the Court of Special Appeals was asked to decide if "the circuit court's failure to rule on the admissibility of appellant's prior convictions for purposes of impeachment before he made an election whether to testify coerced his decision not to testify." 110 Md.App. at 14, 675 A.2d at 1044. The *Williams* court recognized that, "if a defendant elects to remain silent even in reliance on the trial judge's ruling or failure to rule on a motion *in limine*, the ruling ordinarily will not be preserved for review absent an error of constitutional dimension." *Id.* at 33, 675 A.2d at 1053. The Court further recognized "an exception to the general rule" when the claim on appeal "present[s] a pure question of law without a need for a factual predicate." *Id.* at 34, 675 A.2d at 1054 (citing *Passamichali v. State*, 81 Md.App. 731, 739–41, 569 A.2d 733, 737–38, *cert. denied*, 319 Md. 484, 573 A.2d 808 (1990)).[9]

Notwithstanding Williams's election to remain silent, the Court of Special Appeals reached the merits of his claim that he had been coerced into waiving his right to testify. The court did so on the ground that the claim was "one of constitutional dimension." 110 Md.App. at 35, 675 A.2d at 1055. The intermediate appellate court held that, because the trial court incorrectly advised Williams "with respect to the applicable law and employed an erroneous procedure [under Rule 4–252]," his decision to stand silent was " 'not knowingly

---

9. In *Passamichali*, the appellant challenged on appeal the constitutionality of Md.Code (1973), § 10–905 of the Courts and Judicial Proceedings Article, which provides that prior convictions of infamous crimes are per se admissible. The Court of Special Appeals rejected the State's claim that, by not testifying, the appellant waived his right to bring that claim:

> It defies logic to suggest that a defendant must testify in order to preserve for appellate review a claim of deprivation of the constitutional right to testify. If such a requirement existed, this constitutional challenge could never be squarely presented for appellate review because the claim would dissipate upon the defendant's taking the oath [and testifying upon direct examination].

81 Md.App. at 740, 569 A.2d at 733.

and intelligently made.'" 110 Md.App. at 35, 37, 675 A.2d at 1055 (quoting *Morales v. State*, 325 Md. 330, 339, 600 A.2d 851, 855 (1992)).

Petitioner relies on *Williams* to argue that his case likewise presents a question of constitutional dimension in that the trial court's deferral of its ruling on the impeachment evidence until after he testified impermissibly burdened his right to make a free election to testify or remain silent. He points out, too, the *Luce* Court's distinction between that case, which involved "a federal court's preliminary ruling on a question not reaching constitutional dimensions," and other cases in which the Court had "reviewed *Fifth Amendment* challenges to state-court rulings that operated to dissuade defendants from testifying." 469 U.S. at 42, 105 S.Ct. at 464, 83 L.Ed.2d at 448 (emphasis in original). We agree with Petitioner that his decision to remain silent does not foreclose appellate review of his claim. We do so, however, for reasons other than those upon which Petitioner relies.

That a criminal defendant has a fundamental constitutional right to testify in his or her own defense is a concept "deeply entrenched in our modern system of jurisprudence." *Jordan*, 323 Md. at 155, 591 A.2d at 876 (citing *Rock v. Arkansas*, 483 U.S. 44, 49–50, 107 S.Ct. 2704, 2708, 97 L.Ed.2d 37, 44–45 (1987)). The right stems from three constitutional sources: the Fourteenth Amendment due process guarantee of a fair trial, which necessarily entitles a defendant "an opportunity to be heard in his defense"; the Sixth Amendment right to compulsory process, which necessarily includes a defendant's right to testify on his or her own behalf; and the Fifth Amendment guarantee against compelled self-incrimination, which is "fulfilled only when an accused is guaranteed the right to remain silent unless he chooses to speak in the unfettered exercise of his own will." *Rock*, 483 U.S. at 51–53, 107 S.Ct. at 2709–10, 97 L.Ed.2d at 46 (internal quotation marks and citations omitted).

The right to testify, however, "is not without limitation"; rather, the right "may, in appropriate cases, bow to

accommodate other legitimate interests in the criminal trial process." *Rock,* 483 U.S. at 55, 107 S.Ct. at 2711, 97 L.Ed.2d at 49 (internal quotation marks and citations omitted). For example, a defendant is not entitled to testify without subjecting himself to cross-examination and impeachment. *See Portuondo v. Agard,* 529 U.S. 61, 70, 120 S.Ct. 1119, 1126, 146 L.Ed.2d 47, 57 (2000). With regard to rulings on motions *in limine* on proposed impeachment evidence in particular, "the weight of authority has recognized that such a ruling may be taken under advisement without burdening a defendant's federal constitutional rights." WAYNE R. LAFAVE ET AL., CRIMINAL PROCEDURE, § 24.5(d) (3d ed. 2000).

The United States Court of Appeals for the Eighth Circuit, for example, has said that trial courts have no inherent "duty to aid the defendant in formulating his trial strategy regarding the risks of impeachment should he decide to take the stand." *United States v. Witschner,* 624 F.2d 840, 844 (8th Cir.), *cert. denied,* 449 U.S. 994, 101 S.Ct. 532, 66 L.Ed.2d 291 (1980). More recently, that court observed that a trial court's refusal to rule on a motion *in limine* concerning the admissibility of prior crime conviction impeachment evidence—"even if that refusal inhibits a defendant from testifying on his own behalf"—is a matter of trial tactics, not "an issue of constitutional significance." *United States v. Masters,* 840 F.2d 587, 590 (8th Cir.1988). *Accord United States v. Hickey,* 596 F.2d 1082, 1087 (1st Cir.1979) (noting that, even though the postponed ruling would have forced the defendant "to take the stand at his peril," the trial court acted within its discretion to delay its ruling until after the defendant testified); *People v. Washington,* 211 Cal.App.3d 207, 259 Cal.Rptr. 307, 310 (1989) (recognizing the benefits of requiring trial courts to rule on the admissibility of prior convictions before the defendant testifies, but declining to impose such a requirement because the timing of such rulings is best left to the trial courts); *Hansen v. State,* 592 So.2d 114, 130–31 (Miss.1991) (rejecting the appellant's claim that the trial court's refusal to rule preliminarily impermissibly chilled his constitutional right to testify in his own defense, because the "concern is one of

strategy" and, in such instances, the court follows a "discretionary approach").

We agree with the above authorities that a trial court's decision to await a defendant's testimony before deciding whether to allow proposed prior conviction impeachment evidence does not impermissibly chill the defendant's right to testify. Therefore, a decision to defer ruling does not present a question of constitutional dimension. Indeed, "it is not thought inconsistent with the enlightened administration of criminal justice to require the defendant to weigh such pros and cons in deciding whether to testify." *McGautha v. California*, 402 U.S. 183, 215, 91 S.Ct. 1454, 1471, 28 L.Ed.2d 711, 731 (1971). That view finds further support in the Supreme Court's observation in *Luce* that "a reviewing court cannot assume that [an] adverse ruling motivated a defendant's decision not to testify," because an accused's decision whether to testify is essentially a matter of trial strategy, which "seldom turns on the resolution of one factor." 469 U.S. at 42, 105 S.Ct. at 463, 83 L.Ed.2d at 448. Further, although the defendant in *Luce* presented a somewhat different question than is presented here—the correctness of a ruling on the admissibility of impeachment evidence rather than the deferral of such a ruling until after the defendant testified—the Supreme Court expressly rejected the contention that the question implicated the constitutional right of the defendant to make a free election whether to testify or remain silent.

Although we reject Petitioner's contention that his claim is one of constitutional dimension, we agree with him that his claim involves concerns sufficiently different from the claims in *Luce* and *Jordan*. This case does not involve a challenge to a trial court's *in limine* ruling on evidence, which, absent the defendant's testimony, is not amenable to meaningful appellate review. Instead, this case involves a challenge to the trial court's refusal to issue such a ruling before Petitioner elected whether to testify or stand silent. Petitioner's contention is amenable to appellate review, notwithstanding his decision not to testify. We turn, then, to the merits of that contention.

### III.

■ The federal and state courts that have considered contentions like the one Petitioner presents treat such contentions as implicating the exercise of the trial court's discretion. *See Hickey,* 596 F.2d at 1087; *Hansen,* 592 So.2d at 131; *Washington,* 259 Cal.Rptr. at 310. We agree with those courts that such decisions are discretionary and therefore subject to review for abuse of discretion.

Review for abuse of discretion is appropriate given what the trial court must decide when asked to rule upon the admissibility of prior convictions for impeachment purposes. Maryland Rule 5–609(a), much like Federal Rule of Evidence 609(a), requires the trial court, once it determines that a prior conviction meets the Rule 5–609(a) and (b) eligibility requirements, to balance the probative value of prior conviction evidence against the danger of unfair prejudice to the defendant. For this reason, the trial court may deem it necessary in a given case to defer ruling on the admission (or exclusion) of prior crimes impeachment evidence until after the court hears the defendant's testimony.

■ That said, trial courts should rule on motions *in limine* as early as practicable, which often is before the defendant elects whether to testify or remain silent. *See United States v. Cook,* 608 F.2d 1175, 1186 (9th Cir.1979) ("remind[ing]" trial courts "that advance planning helps both parties and the court"), *cert. denied,* 444 U.S. 1034, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980); *United States v. Oakes,* 565 F.2d 170, 171 (1st Cir.1977) (stating that a trial court "should, when feasible, make reasonable efforts to accommodate a defendant by ruling in advance on the admissibility of a criminal record so that he can make an informed decision whether or not to testify"); *Johnson v. State,* 666 So.2d 499, 502 (Miss.1995) (stating that early rulings on motions *in limine* are preferred "unless delay is absolutely necessary to a fair presentation of the issue"); *see also State v. Cole,* 142 N.H. 519, 703 A.2d 658, 660 (N.H.1997) (noting that, "although not absolutely required, trial courts should rule on the admissibility of prior convictions

as impeachment evidence as early as practicable"); *State v. McClure*, 298 Or. 336, 692 P.2d 579, 583 (1984) (commenting that "it is not realistic or necessary for a defendant to have to wait until he is on the stand to find out whether he will be impeached with prior crime evidence," and noting that, although there may be circumstances in which the court may have reason to defer the ruling, "this should be a rare occurrence").

Many are the times when a trial court can and, therefore, should decide a motion *in limine* involving a Rule 5–609 issue before the defendant makes the election. For example, when it is clear that a prior conviction is ineligible for impeachment under Rule 5–609, the court need not hear the defendant's testimony to know how to rule on a motion to exclude that proposed impeachment evidence. Similarly, the trial court certainly can recognize when the risk of unfair prejudice of the proposed impeachment evidence far outweighs its probative value, no matter how the defendant might testify.[10] Moreover, the court may be satisfied that it has a sufficient basis upon which to make an *in limine* ruling without hearing the defendant's direct testimony if the court has learned, through other means, how the defendant is likely to testify. For example, a court may hear admissions that the defense makes during the defense's opening statement, or the court may accept a proffer of the defendant's direct testimony.[11] In any of these circumstances, fairness to the defendant augurs in favor of the trial court's ruling on the motion before the defendant elects whether to testify or remain silent.

---

10. One court provides the example of a convicted rapist who would likely suffer substantial unfair prejudice from the jury's hearing that fact when the defendant is on trial for shoplifting. *See Settles v. State*, 584 So.2d 1260, 1263–64 (Miss.1991).

11. We emphasize that the best practice is for trial judges to accept a proffer of the defendant's testimony and make an *in limine* ruling based on it. The ruling should be accompanied by an express caution to the defendant that, if the defendant's direct testimony departs from the proffer in a way that changes the probative/prejudice balance scrutiny required by Rule 5–609(a), then a final ruling on the admissibility of the impeachment evidence might well be different.

## IV.

It remains for us to decide whether, as Petitioner argues, the trial court abused its discretion in deferring its ruling on his motion *in limine* seeking to prohibit the State from impeaching him with evidence of his prior felony drug convictions.

During the lengthy discussion on the subject, the trial court explained that, in light of the similarity between the pending charges and the prior convictions, it was necessary to await Petitioner's testimony before deciding whether the probative value of the proposed impeachment evidence outweighed the danger of unfair prejudice to Petitioner. To be sure, the court was aware that the defense to the felony charge was to concede the possession of the cocaine and marijuana the police found on Petitioner but deny that the cocaine was for distribution. Yet, the court could not be certain what Petitioner's testimony would be until the court heard it. *See Luce,* 469 U.S. at 41, 105 S.Ct. at 463, 83 L.Ed.2d at 447. For that reason, although the court surely could have accepted a proffer of Petitioner's testimony, *see supra* n. 11, the court was not required to do so. *See Luce,* 469 U.S. at 41 n. 5, 105 S.Ct. at 463 n. 5, 83 L.Ed.2d at 447 n. 5.

We presume that the trial court, not unreasonably, envisioned that, had Petitioner taken the stand, he might not have confined his testimony (consistent with counsel's opening statement) to a denial of an intent to distribute the drugs found in his possession; he might instead have testified that he had never before distributed illegal drugs. Had Petitioner's testimony been consistent with defense counsel's opening statement, then the trial court might have decided that evidence of the prior convictions carried a risk of unfair prejudice to Petitioner. Had Petitioner testified more expansively, then the court might have decided that the State should be permitted to impeach him with the prior convictions. Given the plausibility of either scenario, the court was not required to rule on the motion without first hearing Petitioner's direct testimony.

We therefore hold that the trial court did not abuse its discretion by deferring its ruling on the admissibility of the proposed impeachment evidence until after Petitioner testified. We are all the more unwilling to find an abuse of discretion because Petitioner did not complain at the time that the court's delay chilled his right to make an election. Had Petitioner done so, the trial court might well have opted to provide an *in limine* ruling before Petitioner made his election.

We therefore affirm the judgment of the Court of Special Appeals, albeit on a ground other than that relied upon by that court.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.**

BELL, C.J., files a concurring and dissenting opinion joined by GREENE, J.

BELL, Chief Judge, concurring and dissenting.

It is well-established that a criminal defendant's right to testify in his or her defense is firmly rooted, as enunciated by the United States Supreme Court, *see United States v. Dunnigan,* 507 U.S. 87, 96, 113 S.Ct. 1111, 1117, 122 L.Ed.2d 445, 454 (1993); *Rock v. Arkansas,* 483 U.S. 44, 51, 107 S.Ct. 2704, 2708–09, 97 L.Ed.2d 37, 46 (1987); *Nix v. Whiteside,* 475 U.S. 157, 164, 106 S.Ct. 988, 993, 89 L.Ed.2d 123, 133 (1986), in three provisions of the federal Constitution. First, the right to testify, " 'essential to due process of law in a fair adversary process,' " *Rock,* 483 U.S. at 51, 107 S.Ct. at 2709, 97 L.Ed.2d at 46 *quoting Faretta v. California,* 422 U.S. 806, 819, n. 15, 95 S.Ct. 2525, 2533, n. 15, 45 L.Ed.2d 562, 572, n. 15 (1975), stems from the "Fourteenth Amendment's guarantee that no one shall be deprived of liberty without due process of law [to] include a right to be heard and to offer testimony." *Rock,* 483 U.S. at 51, 107 S.Ct. at 2709, 97 L.Ed.2d at 46. Second, the right is present "in the Compulsory Process Clause of the

Sixth Amendment, which grants a defendant the right to call 'witnesses in his favor,' a right that is guaranteed in the criminal courts of the States by the Fourteenth Amendment." *Id.* at 52, 107 S.Ct. at 2709, 97 L.Ed.2d at 46, *quoting Washington v. Texas,* 388 U.S. 14, 17–19, 87 S.Ct. 1920, 1922–23, 18 L.Ed.2d 1019, 1022–1023 (1967). The right to call a witness naturally extends to the defendant's right to testify in his or own defense. *See Rock,* 483 U.S. at 52, 107 S.Ct. at 2709, 97 L.Ed.2d at 46; *see also Faretta,* 422 U.S. at 819, 95 S.Ct. at 2533, 45 L.Ed.2d at 572. Explicating this third provision of the Constitution, the Supreme Court, in *Rock,* stated:

"The opportunity to testify is also a necessary corollary to the Fifth Amendment's guarantee against compelled testimony. In *Harris v. New York,* 401 U.S. 222, [ ] [91 S.Ct. 643, 28 L.Ed.2d 1] (1971), the Court stated: 'Every criminal defendant is privileged to testify in his own defense, or to refuse to do so.' *Id.,* at 225 [91 S.Ct. at 645, 28 L.Ed.2d at 4].... '[The Fifth Amendment's privilege against self-incrimination] is fulfilled only when an accused is guaranteed the right 'to remain silent unless he chooses to speak in the unfettered exercise of his own will'.... The choice of whether to testify in one's own defense ... is an exercise of the constitutional privilege.' " *Id.,* at 230, [91 S.Ct. at 648, 28 L.Ed.2d at 7] *quoting Malloy v. Hogan,* 378 U.S. 1, 8[, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653, 659] (1964). Footnote 10 reads:

"On numerous occasions the Court has proceeded on the premise that the right to testify on one's own behalf in defense to a criminal charge is a fundamental constitutional right. *See, e.g., Nix v. Whiteside,* 475 U.S. 157, 164[, 106 S.Ct. 988, 993, 89 L.Ed.2d 123, 133] (1986); *id.,* at 186, n. 5[, 106 S.Ct. at 1004, n. 5, 89 L.Ed.2d at 147, n. 5] (BLACKMUN, J., concurring in judgment); *Jones v. Barnes,* 463 U.S. 745, 751[,103 S.Ct. 3308, 3312, 77 L.Ed.2d 987, 993] (1983) (defendant has the 'ultimate authority to make certain fundamental decisions regarding the case, as to whether to ... testify in his or her own

behalf"); *Brooks v. Tennessee,* 406 U.S. 605, 612[, 92 S.Ct. 1891, 1895, 32 L.Ed.2d 358, 365] (1972) ('Whether the defendant is to testify is an important tactical decision as well as a matter of constitutional right')."

*Rock,* 483 U.S. at 52–53, 107 S.Ct. at 2709–10, 97 L.Ed.2d at 47.

Maryland appellate courts specifically have recognized, and applied, each provision. *Burral v. State,* 352 Md. 707, 730–31, 724 A.2d 65, 76 (1999); *Morales v. State,* 325 Md. 330, 335, 600 A.2d 851, 853 (1992); *Gregory v. State,* 189 Md.App. 20, 32, 983 A.2d 542, 549 (2009); particularly as to the latter point, *see Burral v. State,* 352 Md. at 730–31, 724 A.2d at 76–77; *Morales,* 325 Md. at 335, 600 A.2d at 853; *Jordan v. State,* 323 Md. 151, 155–56, 591 A.2d 875, 877 (1991). Moreover, with regard to the right to testify, we have been clear that, ultimately, "[t]he decision whether or not to testify is a significant one and must be made with a basic appreciation of what the choice entails." *Morales,* 325 Md. at 335, 600 A.2d at 853; *see also Gregory,* 189 Md.App. at 32, 983 A.2d 542 ("Because the right to testify is essential to due process in a fair adversary system, it may only be waived knowingly and intelligently, pursuant to the waiver standards established for fundamental constitutional rights in *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)").

Juxtaposed against the defendant's constitutional right to testify is the State's right, although not a constitutional one, to impeach that defendant's testimony and to use, for that purpose, certain prior criminal convictions. *See* Maryland Rule 5–609 [1]. "This right is premised on the proposition that such

---

1. Maryland Rule 5–609. Impeachment by evidence of conviction of crime.

"(a) Generally. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record during examination of the witness, but only if (1) the crime was an infamous crime or other crime relevant to the witness's credibility and (2) the court determines that the probative value of

evidence will assist the factfinder in measuring the credibility of the witness." *Jackson v. State,* 340 Md. 705, 713, 668 A.2d 8, 12 (1995).

Rule 5–609 sets out a three-part test for the trial court to determine whether a prior conviction is admissible to impeach a witness. First, the prior conviction must be either for an infamous crime or for one "relevant to the witness's credibility." Md. Rule 5–609(a). Second, if the conviction meets the first requirement, "the proponent must establish that the conviction is less than fifteen years old." *Jackson,* 340 Md. at 712, 668 A.2d at 12; *see* Md. Rule 5–609(b). Third, and finally, the trial court must determine whether "the probative value of admitting this evidence outweighs the danger of unfair prejudice to the witness or the objecting party." Md. Rule 5–609(a). Problems tend to arise, as it has here, with the balancing test. *See Jackson,* 340 Md. at 713, 668 A.2d at 12.

The petitioner in this case, Isaac E. Dallas, was charged with possession of marijuana, possession of cocaine, and possession of cocaine with intent to distribute. He had two prior convictions, *i.e.,* possession of cocaine with intent to distribute and distribution of cocaine, with which the State was prepared to impeach him and to which, apparently, he had referred when he was arrested for the present charges.[2]

---

admitting this evidence outweighs the danger of unfair prejudice to the witness or the objecting party.
＊ ＊ ＊ ＊
"(b) Time limit. Evidence of a conviction is not admissible under this Rule if a period of more than 15 years has elapsed since the date of the conviction.

"(c) Other limitations. Evidence of a conviction otherwise admissible under section (a) of this Rule shall be excluded if:

"(1) the conviction has been reversed or vacated.

"(2) the conviction has been the subject of a pardon; or

"(3) an appeal or application for leave to appeal from the judgment of conviction is pending, or the time for noting an appeal or filing an application for leave to appeal has not expired.

"(d) Effect of plea of nolo contendere. For purposes of this Rule, 'conviction' includes a plea of nolo contendere followed by a sentence, whether or not the sentence is suspended."

**2.** In addition to the issue, presented by the petitioner concerning the admissibility of prior convictions for the same or similar crime to that

To be sure, the use of prior convictions to impeach a witness, including the defendant, is well-settled in our jurisprudence. Nevertheless, this Court has recognized, and consistently underscored, the dangers associated with such use of prior convictions. *Jackson*, 340 Md. at 714, 668 A.2d at 13 (footnote omitted) (noting that both "impeachment of a witness by prior conviction" and recognition of "the danger in admitting such evidence" "has long been a part of Maryland law"). That use is particularly perilous, we have said, when the prior convictions, although not "*per se* inadmissible," *Jackson*, 340 Md. at 714, 668 A.2d at 13, are for the same or similar charges to those for which the defendant is on trial. This Court in *Ricketts v. State*, 291 Md. 701, 703, 436 A.2d 906, 907–08 (1981), expressed just that concern:

> "The danger in admitting prior convictions as evidence to impeach the defendant stems from the risk of prejudice. The jury may improperly infer that the defendant has a history of criminal activity and therefore is not entitled to a favorable verdict. Such evidence may detract from careful attention to the facts, despite instructions from the Court, influencing the jury to conclude that if the defendant is wrongfully found guilty no real harm is done. Where the crime for which the defendant is on trial is identical or similar to the crime for which he has been previously convicted the danger is greater, as the jury may conclude that because he did it before he most likely has done it *again*. The net effect of such evidence is often to discourage the defendant from taking the stand."

Dissenting in *Jackson*, I made the same point:

> "The appellate courts of this State have long recognized, and been sensitive to, the risk of prejudice that the admission, for impeachment purposes, of prior convictions against a defendant presents. *See e.g. Ricketts v. State*, 291 Md. 701, 703–4, 436 A.2d 906, 907–8 (1981); *Bane v. State*, 73

---

being tried, for impeachment, the State challenged whether that issue was properly preserved for appellate review. I agree with the majority that it was.

Md.App. 135, 142, 533 A.2d 309, 313 (1987), *citing Burrell v. State,* 42 Md.App. 130, 399 A.2d 1354 (1979). That danger is that a jury likely may infer from a prior conviction that the defendant is guilty of the crime for which he or she is presently on trial. *Ricketts,* 291 Md. at 703–04, 436 A.2d at 907–08; *Bane,* 73 Md.App. at 142–43, 533 A.2d at 313; *Burrell,* 42 Md.App. at 136, 399 A.2d at 1357. The risk of prejudice is increased significantly, our courts recognize, when the prior conviction is similar, or identical, to the crime on trial. *See [State v.] Woodland,* 337 Md. [519,] [ ] 526–27, 654 A.2d [1314,] [ ] 1317–18 [1995]; *State v. Giddens,* 335 Md. 205, 221, 642 A.2d 870, 878 (1994) (quoting *Prout v. State,* 311 Md. 348, 364, 535 A.2d 445, 453 (1988)) ('[an] important factor to remember is that a prior conviction which is similar to the crime for which the defendant is on trial may have a tendency to suggest to the jury that if the defendant did it before he probably did it this time'); *Ricketts,* 291 Md. at 703, 436 A.2d at 908 ('where the crime for which the defendant is on trial is identical to or similar to the crime for which he has been previously convicted the danger is greater, as the jury may conclude that because he did it before he most likely has done it again'); *Dyce v. State,* 85 Md.App. 193, 200, 582 A.2d 582, 585–86 (1990) ('in the case before us, the crime for which appellant was already on trial is virtually identical to the crime for which he has been previously convicted. Under these circumstances, admission of the prior conviction constituted a clear abuse of discretion by the trial judge . . .'); *Carter v. State,* 80 Md.App. 686, 694, 566 A.2d 131, 135 (1989) (the court observed that where the charged crime and the crime for which the defendant previously had been convicted were not similar, the 'evidence had no tendency to suggest to the jury that appellant was repeating a crime he had committed in the past'); *Bane,* 73 Md.App. at 142, 533 A.2d at 313 ('prejudice is especially dangerous when the earlier crime is similar to that for which the defendant is currently being tried')."

340 Md. at 723–24, 668 A.2d at 17. And, logically, it follows that the impact potentially is even greater when there are more than one such prior conviction.

One of the dangers inherent in the use of the same or similar prior convictions to impeach, and the one relevant to this case, is its "potential to discourage defendants from testifying in their own behalf." *Id.* at 714, 668 A.2d at 13 (footnote omitted). It was that potential that prompted the *Ricketts* Court to address the role of the trial judge:

> "Thus, the role of the trial judge takes on added importance. It becomes his function to admit only those prior convictions which will assist the jury in assessing the credibility of the defendant. The trial judge must weigh the probative value of the convictions against the prejudice to the defendant in asserting his defense. Obviously, not all prior convictions will survive this balancing process. The problem arises when the trial judge seeks to determine which crimes do prevail and are, therefore, admissible."

291 Md. at 703–04, 436 A.2d at 908. That also accounts for the promulgation of Md. Rule 5–609, which was enacted to "prevent a jury from convicting a defendant based on his past criminal record, or because the jury thinks the defendant is a bad person." *Jackson,* 340 Md. at 715, 668 A.2d at 13.

In this case, although trial court earlier had prohibited, on the basis of its prejudicial impact, the State from introducing the statement, made by the petitioner when apprehended, in which the petitioner acknowledged the subject prior convictions,[3] the trial court refused, pending the petitioner's testimo-

---

**3.** The Harford County police officers who arrested the defendant reported that, when the contraband was recovered from his person, he said: "I'm a three-time loser and I'm facing 25 years. Can't you say you just found the stuff on the ground?" Ruling on the petitioner's oral motion *in limine* to exclude, or in the alternative to redact the Statement and a motion to suppress the petitioner's prior convictions, the court stated:

> "I'm not going to permit any evidence of any prior bad acts or convictions or admissions that relate directly to the crime being charged. I believe, based on my experience, that the prejudicial

ny, to rule on the petitioner's motion asking the court not to permit the State to use his prior distribution convictions for impeachment. The court reasoned:

"THE COURT: ... there is a balancing test that has to be made....

"I have to consider the impeachable balance of the prior crime, the impeachable value of the prior crime. The relevance of the conviction, the witness's subsequent history, the importance of the witness' credibility to the case, and the risk of unfair prejudice.

"We really didn't get into a couple of those elements, No. 1; and No. 2, I made the assumption as to the importance of the witness' credibility, something that I really can't make at this juncture.

"He hadn't said anything.... I really don't know what he's going to say....

"I think the proper procedure in this case is only to make a ruling after your client testifies and before there's any cross-examination to make the decision and to apply the balance of test in this case.

"So I'm reversing my ruling.[4] I make no finding at this point as to whether or not the probative value of the prior conviction outweighs any unfair prejudice to your client.

---

effect of that type of evidence is so vastly prejudicial that it will not outweigh any probative value that it has, and that is particularly evidenced in this case where the drugs were found on the person of the particular individual."

Upon inquiry by the State, the trial court made clear, however, that "[i]f [the petitioner] takes the stand ... that's another issue because that's another consideration.... Now, if he takes the stand, I'm going to have to look at it in another light."

4. Initially, the trial court, convinced by the State's argument, ruled that the State could use the petitioner's prior distribution convictions to impeach the petitioner's testimony, should the petitioner testify. The State had argued:

"Your Honor, there is no case out there that says it's essentially a preclusion that the Court preclude it from allowing impeachables for the same offense.... The Court stands between the balancing process to evaluate it, but there is no prohibition and the Courts have

* * *

"After I hear what you have to say, then I'll make a decision as to the impeachment value. I'll make a decision after hearing about when these convictions occurred and what happened, and I'll make a decision about how important your credibility is to your case, and I will then weigh the risk of any unfair prejudice considering the fact that the prior convictions, in fact, are similar to the charge in this case."

Thus, despite being conversant with Rule 5–609 and having previously rejected the use of "any evidence of any bad acts or convictions or admissions that relate directly to the crime being charged," because of its prejudicial impact, the trial court believed that nothing short of sworn testimony—it rejected the State's willingness to accept a proffer—would suffice as a predicate for the ruling. Faced with the uncertainty with respect to whether his prior distribution convictions could be used to impeach his testimony, the petitioner elected once again not to testify.[5]

---

allowed it. The Courts also have commented that there is a number of factors to consider, such as, whether the defendant testifies as the only witness for the defense, the centrality of his credibility to that testimony, and the presentation of the defense's case.

"In this case, presuming, . . . that the defendant is the only witness to testify for the defense . . . his credibility for defense case is very central to the issue of what the jury should believe.

"In that case, the Courts are even more in favor of recognizing the use of a prior drug charge impeachable when he's on trial for a drug case."

5. The petitioner elected not to testify notwithstanding the court's reminder, "I have already said that I do recognize there's a high risk of unfair prejudice," and advice that "there is a possibility that I might rule to your favor and not permit impeachable offenses." Perhaps he remembered that the trial court's initial ruling also came after that recognition by the court.

The majority suggests that the "Petitioner did not complain at the time that the court's delay chilled his right to make an election." *Dallas v. State*, 413 Md. at 588, 993 A.2d at 666. With all due respect, it was obvious why the petitioner sought the *in limine* ruling, to inform his right to testify. Indeed, when one reads the court's ruling on the *in limine* motion which resulted in the exclusion of the statement, it appeared that the convictions, too, had been excluded. That is why, at

The petitioner's argument is that the trial judge's "refusal to exercise discretion, his arbitrary rejection of a proffer, and his insistence that [petitioner] must testify before the trial judge would make the ruling" prevented the petitioner from making an informed election to testify. Conceding that a trial court has discretionary powers, *Kelly v. State*, 392 Md. 511, 530–31, 898 A.2d 419, 430 (2006), he submits that its discretion does not trump a defendant's constitutional rights.

The majority rejects the petitioner's arguments. Conceding that like all defendants', the petitioner's, right to testify is " 'deeply entrenched.' " *Dallas v. State*, 413 Md. at 582, 993 A.2d at 662 (quoting *Jordan*, 323 Md. at 155, 591 A.2d at 876), it nevertheless denies that the right was encroached upon or impeded by the trial court's refusal to rule. Although acknowledging that the trial court had sufficient evidence on which to rule, the majority defers to the trial court's assessment that, "in light of the similarity between the pending charges and the prior convictions, it was necessary to await Petitioner's testimony before deciding whether the probative value of the proposed impeachment evidence outweighed the danger of unfair prejudice to Petitioner," *id.* at 587, 993 A.2d at 665, holding that the trial court did not abuse its discretion. Accepting, as an appropriate exercise of discretion, the delaying of the ruling until the petitioner testified because the trial court "could not be certain what Petitioner's testimony would be until the court heard it," *id.* at 587, 993 A.2d at 665, it concludes:

"We presume that the trial court, not unreasonably, envisioned that, had Petitioner taken the stand, he might not

---

the close of the State's case, the petitioner began his inquiry, "Of course, as indicated you would not let the State use the two distributions; is that right?" When the court said it had not so ruled, the petitioner then asked that the court do so. For what purpose other than to inform the decision to testify would that motion have been made? When the motion was denied, why should he have to state the obvious, that the ruling affected his decision, and hope that the court would, on that basis, change its mind. In any event, the decision not to testify was made immediately after the failure of the court to rule, as indicated above.

have confined his testimony (consistent with counsel's opening statement) to a denial of an intent to distribute the drugs found in his possession; he might instead have testified that he had never before distributed illegal drugs. Had Petitioner's testimony been consistent with defense counsel's opening statement, then the trial court might have decided that evidence of the prior convictions carried a risk of unfair prejudice to Petitioner. Had Petitioner testified more expansively, then the court might have decided that the State should be permitted to impeach him with the prior convictions. Given the plausibility of either scenario, the court was not required to rule on the motion without first hearing Petitioner's direct testimony."

*Id.* at 587, 993 A.2d at 665–66.

The majority is wrong. In this case, the trial court did not exercise discretion. It is the trial court's belief that "the proper procedure . . . is only to make a ruling after your client testifies and before there's any cross-examination to make the decision and to apply the balance of test in this case." If there were any doubt that the trial court believed that actual testimony by the defendant was required before the balance could be struck, it was dissipated completely when the court rejected, emphatically, the State's suggestion that a proffer be taken from the petitioner:

"[THE STATE:] Your Honor, I just have a suggestion . . . the defense might want to proffer what he would say to the Court. Then I could give you the specific dates, and then you can make your ruling. That way the defendant knows ahead of time.

"THE COURT: Well, I understand that, but a proffer is not testimony. It's going to depend on what he has to say as to whether or not—you know, his credibility is going to be an issue with respect to those particular crimes, and I can't tell. You can proffer all day long, but it's not the actual testimony. I need to hear the testimony."

If needing to hear the testimony itself is what is required, there simply can never be a pre-testimonial ruling that would

inform the decision to testify or remain silent. There would be no opportunity, thus no ability, for the petitioner to make an informed decision; he could only learn whether his prior convictions could be used to impeach his testimony if he testified. Such a hard and fast rule is productive of a choice that is the antithesis of the knowing and intelligent decision-making our right to testify jurisprudence contemplates.

The majority, to be sure, encourages the trial judges to accept proffers and to make rulings on the admissibility of impeachment evidence in advance of the defendant's being called. *Dallas v. State,* 413 Md. at 586, 993 A.2d at 664–65. With these observations, I agree. It also recognizes the desirability of making such ruling and even suggests that there are occasions when such rulings are required. *Id.* at 586–87, 993 A.2d at 664–65. With this recognition and suggestion, I also agree. Indeed, I am of the opinion that this is a case in which an advance ruling not only is desirable, but is, in fact, required. No amount of encouragement and recognition changes the essential factual situation in this case, however, that the trial court did not act in accordance with the encouragement nor the preferred procedure enunciated by the majority. What's more, what it did and said belies any conceivable notion that it believed that it could have. If I read the majority opinion correctly, it holds that the trial court did not abuse its discretion in this case and does not prohibit its so acting in the future.

The majority, despite its encouragement of different, more flexible behavior, in point of fact, has endorsed and validated what the trial court did in this case. Thus, it permits the deferral of rulings on the admissibility of proposed impeachment evidence in all cases; a trial court can always conceive that there may be a change in testimony from that suggested by the pleading and/or opening statements and proffers.

This holding by the majority is surprising amidst its concession that Maryland and other sister courts have held that trial judges "should rule on motions *in limine.*" I agree with the majority that "many are the times when a trial court can and,

therefore should decide a motion *in limine* ... before the defendant makes the election." *Id.* at 586, 993 A.2d at 665. Indeed, I believe this case presents such an occasion.

It is clear that the trial court had enough information at its disposal to conduct the balancing test and make an informed ruling. It had the opening statement of the petitioner, the express statements of the State that it intended to use the prior convictions to impeach the petitioner, the knowledge that the prior convictions were similar to, if not the same, as the charges the petitioner was currently facing, and the completed testimony of one of the officers. Whatever additional information the trial court needed could have been obtained from a proffer. Additionally, the trial court initially acknowledged, and I would agree, that in this case the fact that the prior convictions mirrored the current drug-related charges made the introduction of such evidence before a jury highly prejudicial. "This was an uncomplicated drug case."

A proffer is not intended to take the place of testimony. It does, however, provide the court with information with regard to the evidence the parties intend to produce on an issue. It is a tool. A trial court, aware of the proffer and concerned that the actual testimony might vary from the proffer, could, as the majority notes, "be accompanied by an express caution to the defendant that, if the defendant's direct testimony departs from the proffer in a way that changes the probative/prejudice balance scrutiny required by Rule 5–609(a), then a final ruling on the admissibility of the impeachment evidence might well be different." *Dallas v. State,* 413 Md. at 586, n. 11, 993 A.2d at 665, n. 11; *see also Luce v. United States,* 469 U.S. 38, 41–42, 105 S.Ct. 460, 463, 83 L.Ed.2d 443, 447–48 (1984) ("The ruling is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the defendant's proffer. Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling."). Indeed, this is initially what the trial court stated it would do with regard to the "I'm a three-time loser"

statement. After stating how prejudicial the admission of such evidence would be, the trial court stated:

"THE COURT: If [the petitioner] takes the stand, I mean, that's another issue because that's another consideration, but as to the motion in limine as to his statement, at this juncture I'm going to actually grant the motion in limine based on this set of facts, and, Mr. Macdonell, you have to understand, I'm going to grant it without hearing any evidence based on the proffers made here today with respect to this statement that he made, and I'm doing that anticipating that he is not going to take the stand. Now, if he takes the stand, I'm going to have to look at it in another light."

The court should have done the same with regard to the prior convictions. The trial court had options available that, without cause or explanation, it simply refused to utilize. Instead, it prematurely decided to postpone its ruling. This was an abuse of discretion.

Additionally, Rule 5–609 was adopted "to discriminate between the informative use of past convictions to test credibility, and the pretextual use of past convictions where the convictions are not probative of credibility but instead merely create a negative impression of the defendant." *Jackson*, 340 Md. at 716, 668 A.2d at 13. In accordance with the Rule's purpose, the *Jackson* Court identified five factors to assist in the trial court's execution of the balancing test. It is important to note that what the petitioner testifies, the "actual testimony," is not one of them. Rather, they are: (1) the impeachment value of the prior crime; (2) the time that has elapsed since the conviction and the witness's history subsequent to the conviction; (3) the similarity between the prior crime and the conduct at issue in the instant case; (4) the importance of the witness's testimony; and (5) the centrality of the witness's credibility. *Id.*, 340 Md. at 717, 668 A.2d at 14 (citing *United States v. Mahone*, 537 F.2d 922, 929 (7th Cir.1976)).

The trial court expressed that it was unable to conduct the balancing test because it could not yet assess the "importance of the witness' credibility." To be sure, the court's focus was on one of the relevant factors. The problem is, it did not properly construe or apply that factor.

The "importance of the witness' credibility" is not dependant upon what the petitioner actually says when he or she testifies. Instead, what it implicates is how the petitioner's taking the stand will affect the balancing scale. The trial court, therefore, was not at a disadvantage without the petitioner's actual testimony. It could assess, from its vantage point as the presider at the trial, quite apart from what the defendant might say on the stand, the significance of the petitioner's taking the stand.

On the issue of credibility, this Court recently stated:

" 'Where credibility is the central issue, the probative value of the impeachment is great, and thus weighs heavily against the danger of *unfair* prejudice.' *Jackson*, 340 Md. at 721, 668 A.2d at 16. In the context of the present record, evidence of Lagarde's 2002 felony conviction could have been highly probative. The State's case hinged almost entirely on the jury believing Phillips's testimony, which Lagarde partially corroborated. While not certain, it is at least conceivable, based on what was adduced at trial, that the jury could have been unsure of Phillips's account, making the corroboration provided by Lagarde an important component to the State's successful prosecution."

*King v. State*, 407 Md. 682, 701–02, 967 A.2d 790, 801–02 (2009).[6] The Court further articulated:

"The State's case required the members of the jury to decide whether they believed Phillips's narrative of

---

6. In *King v. State*, the discussion regarding witness credibility surrounded a victim-witness, Kevin Phillips and his fiancé who were both testifying against the defendant, Darryl King. 407 Md. 682, 686, 967 A.2d 790, 792 (2009). Though there are some factual differences between *King* and the case at bar, this does not dilute the strength of the tenets this Court espoused in *King*.

events. . . . Therefore, Lagarde's testimony was important to the State, and the impeachment value of her conviction certainly would have been probative under the circumstances."

*Id.* at 703, 967 A.2d at 802.

The prejudice generated by prior convictions that are the same or similar to the charges the petitioner is facing is great and, therefore, so, too, is the risk of unfair prejudice when they are used to impeach a defendant's credibility. In fact, this Court, in *King,* made clear that the risk of unfair prejudice is heightened when the defendant's own testimony is at issue. It stated:

> "If the relevant witness is the defendant, the risk of unfair prejudice to her or him is high because 'the jury may improperly infer that [she or he] has a history of criminal activity and therefore is not entitled to a favorable verdict.' *Jackson,* 340 Md. at 715, 668 A.2d at 13 (quoting *Ricketts,* 291 Md. at 703, 436 A.2d at 908). Stated otherwise, the jury may feel that 'if the defendant is wrongfully found guilty[,] no real harm is done.' *Id.* (quoting *Ricketts,* 291 Md. at 703, 436 A.2d at 908); *see also* [*State v.*] *Westpoint,* 404 Md. [455,] [ ] 479, 947 A.2d [519,] [ ] 534 (2008) (quoting same). For a defendant wishing to tell her or his story to the jury, this translates to a very real prejudice: the defendant may be forced to choose between testifying in her or his own defense with the risk of being convicted by the jury's misuse of impeachment evidence as propensity evidence, on one hand, and not testifying and foregoing a defense, on the other. *See Westpoint,* 404 Md. at 479, 947 A.2d at 534; *Jackson,* 340 Md. at 715, 668 A.2d at 13."

*Id.* at 704, 967 A.2d at 803. That is the situation existed here. The risk of that "very real prejudice," *id.,* was patent. The magnitude of the risk was not dependent on the substance of the petitioner's testimony; it neither expanded nor contracted depending on what the petitioner said or did not say. The trial court's conclusion that it needed to hear the petitioner's testimony before it could determine the balance, therefore,

**604**

does not follow. It simply needed to, and should have, considered the effect of the petitioner's taking the stand.

Judge GREENE joins in the views herein expressed.