*Carl Franklin Burnside v. State of Maryland*, No. 71, September Term, 2017. Opinion by Greene, J.

**CRIMINAL LAW — EVIDENCE — PRIOR CONVICTION IMPEACHMENT —** The Court of Appeals held, consistent with *Dallas v. State*, 413 Md. 569, 993 A.2d 665 (2010), that a trial court should make a preliminary ruling regarding the admission of a prior conviction, when the trial court has appropriate means of determining how a defendant might testify and it is apparent that a delayed ruling would likely cause a chilling effect on the defendant's constitutional right to testify.

**CRIMINAL LAW — EVIDENCE — MARYLAND RULE 5-609 —** The Court of Appeals held that the trial court failed to exercise its discretion, thereby committing an abuse of discretion, when it refused to conduct a Maryland Rule 5-609 balancing test prior to the defendant's election to testify.

Circuit Court for Washington County
Case No. 21-K-16-052453
Argued: May 2, 2018

IN THE COURT OF APPEALS

OF MARYLAND

No. 71

September Term, 2017

_____

CARL FRANKLIN BURNSIDE

v.

STATE OF MARYLAND

_____

Barbera, C.J.
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.

_____

Opinion by Greene, J.
Watts and Getty, JJ., concur and dissent.

_____

Filed: July 11, 2018

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Bessie Decker, Clerk
April 20, 2018

In this case we must decide whether it was an abuse of discretion for the trial court to choose to wait until after the defendant testified before ruling on the admissibility of the defendant's prior conviction for purposes of impeachment. Maryland Rule 5-609 ("Rule 5-609" or "the Rule") permits the admission of prior convictions for impeachment purposes, so long as the conviction is within the class of convictions concerning credibility, 15 years have not elapsed since the conviction and the probative value of the conviction outweighs its prejudicial effect. The Rule embodies our respect for these interests and serves as the starting point from which all trial judges must begin in order to strike the appropriate balance. Our decision today reconciles the competing interests between a defendant's constitutional right to testify and the State's less-protected right to cross-examine a defendant for impeachment purposes. We are specifically called upon to examine whether the trial judge struck the appropriate balance in Carl Burnside's ("Petitioner" or "Mr. Burnside") trial, in which Mr. Burnside was convicted for possession with intent to distribute a controlled dangerous substance.

## I.

## Facts

The facts presented at trial are as follows. On April 4, 2016, shortly after midnight, Deputy Kyle Snodderly stopped a vehicle operating with only one illuminated headlight in Hagerstown, Washington County, Maryland. There were two individuals in the vehicle, the driver, Nicholas Knight, and Petitioner, Carl Burnside, who sat in the front passenger seat. Mr. Knight produced a driver's license that authorized him to drive only to and from his place employment. Deputy Snodderly testified that Petitioner produced identification

and informed Deputy Snodderly that he may have had outstanding traffic warrants. The vehicle was registered to a Joey Jones in Philadelphia, Pennsylvania. Petitioner informed the deputy that Mr. Jones was his cousin, and Mr. Knight informed Deputy Snodderly that he was helping Mr. Burnside to relocate from Philadelphia to Hagerstown, Maryland.

With regard to the initial traffic stop, Deputy Snodderly testified that he became suspicious[1] about the occupants in the vehicle because he did not observe any items in the vehicle—other than a dirty fish tank—that were consistent with Mr. Knight's statement that he was helping Petitioner move. Deputy Snodderly's warrant check confirmed that Petitioner had an outstanding warrant for driving without a license. Upon confirmation, Deputy Snodderly called for backup and placed Petitioner in custody and searched Petitioner incident to the arrest. Shortly thereafter, Deputy Jasen Logsdon arrived on the scene as backup. The search of Mr. Burnside produced $5,169.69 cash in mostly $20 bills, and a cell phone. Despite Mr. Burnside's statement that some of the cash was for his rent, and some of it was money he won at a casino,[2] Deputy Logsdon requested a K-9 unit to conduct a "free air sniff" of the vehicle because of the large amount of cash recovered from Petitioner, which apparently is typical of "people that partake in drug sales [and] distribution."

---

[1] On cross-examination, Deputy Snodderly testified that he did not observe Petitioner or Mr. Knight participating in any drug transactions, and that before he obtained Mr. Knight's and Petitioner's identifications his suspicion of the out-of-state vehicle leaving a high-crime area was "basically a hunch."

[2] One of the arresting officers testified that he did not investigate the casino winnings.

2

Officer Curtis Kelley arrived on the scene with his K-9 partner, Jackie. Jackie indicated a positive alert for a controlled dangerous substance near the trunk of the car. Mr. Knight was asked to step out of the vehicle upon Jackie's positive alert. Mr. Burnside also informed one of the officers that there was a marijuana cigarette in the ashtray of the vehicle. The vehicle search recovered the partially smoked marijuana cigarette, three hypodermic syringes associated with heroin usage, a metal spoon with "white powdery residue on the bowl and black burn marks on the bottom side," a large quantity of Ziploc baggies, each containing heroin or cocaine, a large quantity of empty Ziploc baggies, a digital scale with heroin residue on it, a duffle bag, and a shower bag containing toiletries.[3] Deputy Logsdon testified that he searched Mr. Knight twice; the first search revealed nothing and the second search revealed an orange syringe cap.

Mr. Knight was called as a State witness in Mr. Burnside's criminal proceedings. On direct examination, Mr. Knight testified that he was charged with intent to distribute heroin and crack cocaine, with possession of controlled paraphernalia, and for driving on a restricted license. He testified that he entered a plea agreement with the State in which he pled guilty to possession of controlled paraphernalia, *i.e.*, the syringes recovered from the vehicle, in exchange for "pre-trial sentencing and probation." He testified that he was addicted to drugs and that he was participating in a court-ordered drug rehabilitation program. On cross-examination, he testified that his possession with intent to distribute

---

[3] The testifying officer described the content of the baggies and the residue on the digital scale as a "tan powder substance"; later lab sample testing revealed that the substance contained heroin and cocaine.

charges were dropped in exchange for his testimony against Mr. Burnside and that his sentencing for the possession of paraphernalia was delayed until after Mr. Burnside's trial. Mr. Knight explained that the delayed sentencing would allow the State to observe and evaluate his testimony against Mr. Burnside. When asked on cross-examination if he had ever sold heroin or crack cocaine, he replied in the negative. Finally, when defense counsel asked Mr. Knight if he knew Jason Marshall, William Bucklew, or Scott Dorman, Mr. Knight denied knowing all three individuals.

The Defense presented three witnesses: Jason Marshall, William Bucklew, and Scott Dorman. Each of the individuals testified to purchasing drugs from Mr. Knight. Mr. Marshall testified that he purchased heroin from Mr. Knight two years before the time of his testimony, and that a friend of his purchased drugs from Mr. Knight. Mr. Bucklew testified that he purchased heroin from Mr. Knight in February or March 2016. Mr. Dorman testified that he purchased heroin and what he thought to be crack cocaine from Knight six to seven months before the time of his testimony. Mr. Burnside did not testify in his defense.

*Mr. Burnside's Theory of Defense*

For a trial judge to conduct an appropriate balancing test, he or she must have some knowledge regarding the nature of a defendant's testimony, which is usually illuminated by the defendant's theory of defense. The State contends that Petitioner's theory of the case was too ambiguous for the trial judge to conduct an informed balancing test prior to Petitioner's testimony. The record suggests that the Defense's theory centered around the fact that there was another individual, Mr. Nicholas Knight, in the vehicle with Petitioner,

4

and that Mr. Knight could have been in actual or constructive possession of the drugs recovered from the vehicle. During the opening statement the Defense encouraged the jury to

> pay attention to the details[]. . . . because once Nicholas Knight was taken into custody himself, and they recovered a cell phone from him as well [as] [] forty-five dollars in cash. . . . [and] three caps to the syringes that were found right next to him, the driver's side and the console.

Defense counsel explained to the jury that:

> [T]he evidence . . . will show that Mr. Knight had possession of the key to the car. Mr. Knight . . . [was] the one who [was] driving the vehicle in violation of the law. The evidence will also show that behind the closed passenger compartment is [] a black hide-away-key. . . . [but] [t]here is no such thing as a driver's side passenger compartment . . . . [t]here is only one glovebox in the car. It's always in front of the passenger.
>
> \*       \*       \*
>
> The evidence will show that Mr. Knight was charged with the exact same offenses . . . . [b]ut he was able to avoid felony convictions and significant prison time by simply walking into the courtroom . . . [and] point[ing] the finger at [Mr. Burnside]. By cutting a deal . . . he gets to walk out that door and go home.

Later, during a bench conference regarding the admission of a receipt into evidence, defense counsel objected to its admission partly "because obviously the[] central issue here for the jury to decide is [] whose drugs are they." To which the Court replied, "Right."

When viewed collectively, the defense attorney's comments during opening statement and the bench conference, and the defendant's three witnesses, outline the theory of the defense in this case. The crux of the defense theory was to cast reasonable doubt on Mr. Burnside's connection to the drugs and to suggest that Mr. Knight could have possessed the drugs with the intent to distribute.

5

*Mr. Burnside's Decision to Not Testify*

After Marshall, Bucklew, and Dorman testified, defense counsel advised Mr. Burnside, out of the hearing of the jury, of his Fifth Amendment right against self-incrimination and informed him that because he had a prior conviction for possession with intent to distribute a controlled dangerous substance,[4] she would ask the court to conduct a balancing test "to determine whether or not the State would be allowed to use [] [that] prior conviction against [him]." When asked if he wished to testify in light of the potential impeachment, Mr. Burnside replied:

> [BURNSIDE]: I just know that if my past is going to be used against me, then I would not like to be testifying because it would be bias, it would be biased [sic] me to the charges I'm facing right now.
> [DEFENSE COUNSEL]: You are saying you would be afraid you would be prejudiced?
> [BURNSIDE]: Yes
> [DEFENSE COUNSEL]: I believe he has a conviction your Honor. The only thing is the State has served us with mandatory minimum notice as well as subsequent offender notice and they have attached a certified docket entry for possession with intent. It does not say what substance it is, [] but there is a conviction for that offense. And I can't recall if it was 2011 or 2012 when it occurred.
> [BURNSIDE]: 2012.
> [DEFENSE COUNSEL]: Okay. Okay. And I would just ask this Court, if - - if the [c]ourt would conduct a balancing test. I would agree that it is [] within the purview of crimes that are involving dishonesty. . . . I would agree that it's been for the past 15 years. But part three of that test, according to *Jackson* would be whether or not it would be more prejudicial than it would be probative. We would argue that [] in this instance with a man who is on trial for possessing with intent to distribute, my fear would be that if the

---

[4] The record does not specify the controlled dangerous substance that Mr. Burnside was convicted of possessing with the intent to distribute. There is enough similarity, however, between Mr. Burnside's prior conviction for possession with intent to distribute and his pending charges for possession with intent to distribute heroin and cocaine to render the admission of the prior conviction highly prejudicial.

[c]ourt were to allow that, the State to impeach him with a prior conviction that the jury would base their decision solely on his previous conviction and not based upon the evidence presented here today.

[THE STATE]: Your honor, I do have the case that uh (inaudible) if he takes the stand and he opens the door than he would be subject to impeachment. . . .

[THE COURT]: That's - - It is a balancing test but I don't think I need to make the balancing decision before he testifies. I think it's his decision whether he wants to testify or doesn't want to testify. If he takes the stand and the State attempts to bring up his prior conviction then we will have a determination at that time, but I'm not going to preliminarily make that decision.

[BURNSIDE]: I choose to exercise my Fifth Amendment right to remain silent and not testify due to his Honor's previous objections for anything I say on our [sic] behalf.

[DEFENSE COUNSEL]: So, it is your decision not to testify.

[BURNSIDE]: Yes, I don't want to testify. I won't get no [sic] justice.

The defense rested its case after Mr. Burnside elected not to testify. On September 16, 2016, after the jury heard testimony from the three arresting officers, a drug distribution expert, a controlled dangerous substances expert, three defense witnesses, and reviewed physical evidence including photos of the confiscated drugs, the jury convicted Mr. Burnside of possession with intent to distribute heroin and possession of cocaine. He was sentenced to 15 years, with the first 10 to be served without the possibility of parole. The jury acquitted him of possession with intent to distribute cocaine, and the State filed a nolle prosequi[5] to the charge of possession of drug paraphernalia.

---

[5] A nolle prosequi is "an official declaration by the State, announcing that it will not pursue the charges in a particular charging document." *State v. Simms*, 456 Md. 551, 557, 175 A.3d 681, 685 (2017) (quoting *Gilmore v. State*, 389 Md. 656, 659, 887 A.2d 549, 550 n.2 (2005)).

## Procedural History

Mr. Burnside noted a timely appeal to the Court of Special Appeals raising five issues for review with only one relevant to our holding today. *Burnside v. State*, No. 2182, Sept. Term, 2016 (2017). Burnside contended that the trial court failed to exercise its discretion when it chose not to give an advance ruling on the admissibility of his prior conviction. *Id.* Mr. Burnside argued that the trial court's failure to exercise its discretion amounted to an abuse of discretion, given his desire to make an informed decision on whether he should testify. *Id.* The State contended that Mr. Burnside failed to preserve the issue for review because defense counsel did not object when the trial court declined to conduct the balancing test. *Id.* In an unreported opinion, the Court of Special Appeals affirmed the conviction holding, among other things, that it would have been "premature" for the trial court to engage in a balancing test without observing Mr. Burnside's testimony first. *Id.*

In his petition for writ of certiorari, Mr. Burnside presented the following questions:

1. Where Petitioner was on trial for a felony drug offense and his theory of defense was clear and consistent throughout the trial, did the trial court abuse its discretion, or fail to properly exercise discretion, in refusing to rule upon the admissibility for impeachment purposes of Petitioner's prior felony drug conviction prior to Petitioner's election of whether to testify?

2. Did the Court of Special Appeals misapply the harmless error standard, as recently reiterated by this Court in *Porter v. State*, 455 Md. 220 (2017), in finding that the trial court's errors in permitting the impeachment of a defense witness was harmless beyond a reasonable doubt?

We granted certiorari. *Burnside v. State*, 456 Md. 521, 175 A.3d 150 (2017). For reasons cited herein, we hold that the trial court failed to exercise its discretion, and in doing so,

8

abused its discretion by refusing to conduct a balancing test before Mr. Burnside's election to testify or remain silent. Because we answer the first question in the affirmative, we do not reach the second. Accordingly, we reverse the judgment of the intermediate appellate court.

## II.

### A Defendant's Right to Testify

Maryland has long recognized the importance of preserving a defendant's right to testify. This right is guaranteed both federally and in Maryland by the Fourteenth Amendment Due Process Clause, the Sixth Amendment Compulsory Process Clause, the Fifth Amendment right against compelled testimony (with the Sixth and Fifth Amendment being applied to the states by the Fourteenth Amendment), and in Articles 21 and 22 of the Maryland Declaration of Rights. *Dallas v. State*, 413 Md. 569, 588–90, 993 A.2d 655, 666–67 (2010) (C.J. Bell, dissenting); *Burral v. State*, 352 Md. 707, 730–31, 724 A.2d 65, 76 (1999); *Morales v. State*, 325 Md. 330, 335, 600 A.2d 851, 853 (1992). A defendant's right to testify "is a significant one and must be made with a basic appreciation of what the choice entails." *Morales*, 325 Md. at 335, 600 A.2d at 853. That choice entails and ensures a defendant's right to "present his own version of events in his [or her] own words." *Rock v. Arkansas*, 483 U.S. 44, 52, 107 S. Ct. 2704, 2709, 97 L. Ed. 2d 37, 47 (1987). "A defendant's opportunity to conduct his own defense, [however] . . . is incomplete if he may not present himself as a witness." *Id.* Given the constitutional nature of a defendant's right to testify, the decision whether to testify must be made knowingly and voluntarily.

9

*Morales*, 325 Md. at 336–38, 600 A.2d at 854; *Winters v. State*, 434 Md. 527, 540, 76 A.3d 986, 993 (2013).

## III.

## The Balancing Test

A competing set of interests exists between this "fundamental constitutional right" to testify in one's own defense and the State's right to impeach a defendant by introducing prior criminal convictions. *Dallas*, 413 Md. at 590, 993 A.2d at 667; *Rock*, 483 U.S. at 52, 107 S. Ct. at 2709, L. Ed. At 46; *see* Maryland Rule 5-609 (a derivative of Federal Rule of Evidence 609). Maryland Rule 5-609 was promulgated with the purpose of limiting the danger of prejudice by "impos[ing] limitations on the use of past convictions in an effort to discriminate between the informative use of past convictions to test credibility, and the pretextual use of past convictions where the convictions are not probative of credibility but instead merely create a negative impression of the defendant." *Cure v. State*, 195 Md. App. 557, 575, 7 A.3d 145, 155 (2010), *aff'd*, 421 Md. 300, 26 A.3d 899 (2011) (quoting *Jackson v. State*, 340 Md. 705, 715–16, 668 A.2d 8, 13 (1995)).

The rule was crafted with the understanding that, absent those limitations, a jury could potentially convict a defendant based on the defendant's criminal history or simply "because [it] thinks the defendant is a bad person." *Id.* (quoting *Jackson v. State*, 340 Md. 705, 715, 668 A.2d 8, 13 (1995)). A defendant's prior criminal conduct could compel a jury to believe that the defendant "is not entitled to a favorable verdict," and that "if the defendant is wrongfully found guilty, no real harm is done." *Hannah v. State*, 420 Md. 339, 347, 23 A.3d 192, 196 (2011) (quoting *Jackson v. State*, 340 Md. 705, 715, 668 A.2d

10

8, 13 (1995) (recognizing that "the defendant may be forced to choose between testifying in her or his own defense with the risk of being convicted by the jury's misuse of impeachment evidence as propensity evidence, on one hand, and not testifying and foregoing a defense, on the other.").

In *Cure*, the Court of Special Appeals explained Rule 5-609's three-part test for determining the admissibility of prior convictions for impeachment purposes:[6]

> First, the prior conviction must be within the "eligible universe" of crimes, which consists of two categories: infamous crimes and other crimes relevant to a witness's credibility[7] . . . . The second step requires a determination by the trial court that the prior conviction is less than 15 years old, not reversed on appeal, or subject to a pardon or pending appeal. . . . If the first two steps are satisfied, the trial court must then determine whether "the probative value of the prior conviction outweighs the danger of unfair prejudice to the witness or objecting party."

*Cure*, 195 Md. App. at 575–76, 7 A.3d at 155 (internal citations omitted). When a trial judge engages in the balancing test, appellate courts "accord[] every reasonable presumption of correctness," and will not "disturb that discretion unless it is clearly

---

[6] Rule 5-609, as written, provides:

> For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record during examination of the witness, but only if (1) the crime was an infamous crime or other crime relevant to the witness's credibility and (2) the court determines that the probative value of admitting this evidence outweighs the danger of unfair prejudice to the witness or the objecting party.

[7] A criminal conviction for possession with intent to distribute a dangerous substance is relevant to credibility and may be admissible for impeachment purposes. *See State v. Woodland*, 337 Md. 519, 524, 654 A.2d 1314, 1316 (1995).

11

abused." *Id.* at 576, 7 A.3d at 156. We have, however, held that "[t]he failure to exercise discretion when its exercise is called for is an abuse of discretion." *Johnson v. State*, 325 Md. 511, 520, 601 A.2d 1093, 1097 (1992).

Had the trial judge conducted a balancing test concerning Mr. Burnside's prior conviction, the judge likely may have considered the following factors: "(1) the impeachment value of the prior crime; (2) the point in time of the conviction and the defendant's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the defendant's credibility." *Cure*, 195 Md. App. at 576, 7 A.3d at 155 (quoting *Jackson v. State*, 340 Md. 705, 717, 668 A.2d 8, 14 (1995) (explaining that "[t]hese factors 'should not be considered mechanically or exclusively,' but rather should be viewed as 'a useful aid to trial courts in performing the balancing exercise mandated by the Rule.'" (citing *Jackson v. State*, 340 Md. 705, 717, 668 A.2d 8, 14 (1995)).

This Court has further recognized the prejudicial danger in admitting evidence of prior convictions for the same or similar offenses to that of the current charge. *Jackson v. State*, 340 Md. 705, 668 A.2d 8 (1995). While it is not always an abuse of discretion, the Court of Appeals has acknowledged that admitting into evidence a prior conviction for the same or similar crime as the pending charge/s against the defendant creates a dangerous "potential to discourage defendants from testifying in their own behalf." *Id.* at 714, 668 A.2d at 13 (citing *Ricketts v. State*, 291 Md. 701, 703, 436 A.2d 906, 908 (1981)); *Hannah v. State*, 420 Md. 339, 347, 23 A.3d 192, 196 (2011). For this reason, the weighing of probative value versus prejudicial harm by the trial court "takes on added importance" in

12

such cases. *Jackson*, 340 Md. at 715, 668 A.3d at 13 (quoting *Ricketts v. State*, 291 Md. 701, 703–04, 436 A.2d 906, 907–08).

In *Dallas*, a defendant was convicted of possession of cocaine with intent to distribute. 413 Md. at 571, 993 A.2d at 656. At trial, the defendant sought a ruling that prevented the State from impeaching the defendant using his prior convictions of distribution and possession with intent to distribute cocaine. *Id.* The trial judge initially denied the defendant's request, concluding that the convictions were relevant to credibility, and therefore, admissible for the purposes of impeachment. *Id.* at 573, 993 A.2d at 657. The trial judge ultimately reversed his ruling on the basis that the defendant "hadn't said anything," and that he would "need to hear what [the defendant] ha[d] to say," concluding that the "proper procedure . . . was to make a ruling after [the defendant] testified and before [] any cross-examination." *Id.* at 574, 993 A.2d at 657–58. The trial judge denied the State's offer to accept a proffer of Mr. Dallas's testimony, despite the defendant's "clear . . . theory of defense," stating that the defendant's actual testimony was necessary to render his ruling. *Id.* at 573, 993 A.2d at 657. The defendant chose not to testify and subsequently was convicted. *Id.* Dallas appealed, arguing that the "[trial] court's deferral of its ruling on the admissibility of the impeachment evidence impermissibly chilled his right to make a free election to testify or remain silent." *Id.* at 572, 993 A.2d at 656.

The Court of Special Appeals affirmed the conviction, holding that Dallas's issue was not preserved because he chose not to testify. *Id.* at 575, 993 A.2d at 658. We affirmed, recognizing that Dallas's "contention [was] amenable to appellate review," and

held that the trial judge did not abuse his discretion by deferring his ruling on the admissibility of the impeachment evidence. *Id.* at 584, 588, 993 A.2d at 664, 666.

The *Dallas* Court presumed that the trial judge, in choosing to wait until Mr. Dallas testified, could have reasonably imagined various scenarios, some of which would have warranted admitting the evidence, and others that would have warranted not admitting the evidence. *Id.* at 587, 993 A.2d at 665–66. For example, the trial judge could have

> envisioned that, had [Dallas] taken the stand, he might not have confined his testimony (consistent with counsel's opening statement) to a denial of an intent to distribute the drugs found in his possession; he might instead have testified that he had never before distributed illegal drugs. Had [Dallas's] testimony been consistent with defense counsel's opening statement, then the trial court might have decided that evidence of the prior convictions carried a risk of unfair prejudice to [Dallas]. Had [Dallas] testified more expansively, then the court might have decided that the State should be permitted to impeach him with the prior convictions.

*Id.* We held that, "[g]iven the plausibility of either scenario, the court was not required to rule on the motion without first hearing [Dallas's] direct testimony." *Id.* at 588, 993 A.2d at 666. We further explained that, had Mr. Dallas noted that the court's delayed ruling "chilled his right to make an election," then the trial court "might well have opted to provide an *in limine* ruling before [Dallas] made his election." *Id.* at 588, 993 A.2d at 666.

Despite our particular holding in *Dallas*, we reiterated that:

> Many are the times when a trial court can and, therefore, *should* decide a motion *in limine* involving a Rule 5–609 issue before the defendant makes the election. For example, . . . the trial court certainly can recognize when the risk of unfair prejudice of the proposed impeachment evidence far outweighs its probative value, no matter how the defendant might testify. Moreover, the court may be satisfied that it has a sufficient basis upon which to make an *in limine* ruling without hearing the defendant's direct testimony if the court has learned, through other means, how the defendant is likely to testify. For example, a court may hear admissions that the defense makes

14

during the defense's opening statement, or the court may accept a proffer of the defendant's direct testimony. In any of these circumstances, fairness to the defendant augurs in favor of the trial court's ruling on the motion before the defendant elects whether to testify or remain silent.

*Id.* at 586, 993 A.2d at 665 (emphasis added) (footnotes omitted).

In *Jackson*, we dealt with a similar issue concerning the use of prior convictions to impeach a defendant who was on trial for a crime similar to his prior conviction. 340 Md. at 707, 668 A.2d at 9. In *Jackson* the defendant, Robert M. Jackson, stood trial for theft. *Id.* Mr. Jackson filed a pre-trial motion *in limine* to exclude a probation before judgment disposition for a 1991 theft as well as a conviction for another 1991 theft. *Id.* at 709, 668 A.2d at 10. The trial court granted the motion *in limine* regarding the probation before judgment disposition but denied the motion regarding the theft conviction. *Id.* In his testimony, Mr. Jackson denied any involvement with the crime and gave an alibi which was corroborated by two witnesses. *Id.* at 709–10, 668 A.2d at 10. On cross-examination, Mr. Jackson admitted to having a prior conviction, but stated that he did not know the name of the offense. *Id.* at 710, 668 A.2d at 11. The State introduced a certified copy of his theft conviction. *Id.* Mr. Jackson appealed, arguing "that the similarity of the prior crime to the charged offense rendered the prior conviction so prejudicial as to outweigh any probative value that it may have had." *Id.* at 711, 668 A.2d at 11.

We disagreed, holding that the trial court did not abuse its discretion by admitting the prior conviction because "the similarity of the prior conviction to the offense charged does not, absent other considerations, require exclusion." *Id.* at 718, 668 A.2d at 14. We adopted the view that:

15

> [e]vidence of a prior conviction for a crime that is similar or identical to the charged crime is subject to the balancing of its probativeness against its potential for unfair prejudice. Although the [balancing] guidelines include a factor related to the degree of similarity between the prior conviction and the charged offense, this is only one consideration and should not be viewed in isolation.

*Id.* at 718, 668 A.2d at 14.

Relying on *Mahone*, we observed that four of the five *Mahone* factors[8] "weighed in favor of admitting the prior theft conviction." *Id.* at 720, 668 A.2d at 16. We opined that with regard to the first factor, Mr. Jackson's prior theft conviction weighed in favor of admission because "the offense of theft, because of its inherent deceitfulness, is universally recognized as conduct which reflects adversely on a witness's honesty." *Id.* at 720–21, 668 A.2d at 16. Furthermore, Jackson's prior conviction was less than three years old, a factor that also weighed in favor of admission. *Id.* at 721, 668 A.2d at 16. We did recognize, however, that because Mr. Jackson's prior conviction for theft was the same offense for which he was on trial, this factor weighed against admission. *Id.* Next, we considered factors four and five, the importance of the defendant's testimony[9] and the

---

[8] The five factors, which bear repeating, are: "(1) the impeachment value of the prior crime; (2) the point in time of the conviction and the defendant's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the defendant's credibility." *Jackson v. State,* 340 Md. 705, 717, 668 A.2d 8, 14 (1995) (quoting *United States v. Mahone,* 537 F.2d 922, 929 (7th Cir. 1976), *cert. denied,* 429 U.S. 1025, 97 S. Ct. 646, 50 L.Ed.2d 627 (1976)).

[9] The Supreme Court of Minnesota framed the importance of a defendant's testimony as the contemplation of the defendant's "constitutional right to present his [or her] version of events to a jury," along with the possibility that the admission of prior convictions may

16

centrality of the defendant's credibility, recognizing that they "underlie [] Rule [5-609,]: [by] balancing the defendant's right to testify against the State's right to impeach the witness on cross-examination." *Id.* After balancing the competing interests inherent in factors four and five, we concluded that because Mr. Jackson's credibility was "central to the case," the balancing of the two factors weighed in favor of admission. *Id.* at 722, 668 A.2d at 16.

We think it necessary to highlight the two critical differences between *Jackson* and the instant case. Firstly, in *Jackson* we were called upon to determine if a trial court abused its discretion by admitting the prior conviction, not whether the trial court's delay in conducting a balancing test constituted an abuse of discretion. *Id.* Secondly, the defendant in *Jackson* testified that he was not involved in the crime, and in the instant case Mr. Burnside elected not to testify. *Id.* at 708, 668 A.2d at 9.

## IV.

It remains for us to determine whether the trial court abused its discretion in choosing to delay an application of Rule 5-609's balancing test. We have declared that "a failure to exercise discretion when its exercise is called for is an abuse of discretion." *Johnson*, 325 Md. 511, 520, 601 A.2d 1093, 1097 (1992). Furthermore, "[s]o long as the [trial judge] applies the proper legal standards and reaches a reasonable conclusion based on the facts before it, an appellate court should not reverse a decision vested in the trial

---

"cause the defendant not to testify," and the greater need for the "jury [to] hear the defendant's version of the case than to allow him [or her] to be impeached." *State v. Zornes*, 831 N.W.2d 609, 628 (Minn. 2013).

court's discretion merely because the appellate court reaches a different conclusion." *Univ. of Maryland Med. Sys. Corp. v. Kerrigan*, 456 Md. 393, 402, 174 A.3d 351, 356 (2017). With these standards guiding our review, in this case we must determine if the trial court's decision to not make an advanced ruling amounted to an abuse of discretion.

As a preliminary matter, we discuss whether the issue has been preserved for our review. The State contends that the issue is not preserved because "defense counsel never asked the trial court to make an advance ruling." Mr. Burnside contends that the issue is preserved because "his counsel's and his own protests put the trial court on notice that the defense wanted a ruling prior to making an election," and because the issue was decided by the trial court. We agree with Mr. Burnside that defense counsel sought an advanced ruling regarding the admissibility of the prior conviction and that the decision was decided by the trial court when it denied defense counsel's request stating, "If he takes the stand and the State attempts to bring up his prior conviction then we will have a determination at that time, but I'm not going to *preliminarily* make that decision." Therefore, the issue is preserved for our review. *See* Maryland Rule 8-131 ("Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court.").

In *Dallas*, we recognized that there are circumstances where "fairness to the defendant augurs in favor of the trial court's ruling on the motion before the defendant elects whether to testify or remain silent." 413 Md. at 586, 993 A.2d at 665. The facts in the instant case demonstrate such a circumstance. Mr. Burnside's theory of defense was clear and established at the outset of the trial, and Mr. Burnside, therefore, had presented

18

to the trial court "other means" of determining how he would likely testify. *See id.* For example, all three of the defense witnesses testified that they had purchased drugs from Mr. Knight and one of the witnesses knew of another individual who had purchased drugs from Mr. Knight as well. Additionally, defense counsel made it clear to the trial judge that the jury's focus was to determine "whose drugs they are," to which the trial judge agreed.

In its brief, the State contends that unlike the defendant in *Dallas*, Mr. Burnside's "theory of the case was not clear."[10] This contention is completely incongruent with what occurred at trial. During closing argument, the State seems to have understood the theory of the defense as one in which the defense "point[s] the finger . . . [at] Mr. Knight," and refers to the case as a "whodunit." In an attempt to distinguish this case from that of *Dallas*, the State quotes from Chief Judge Bell's concurring and dissenting opinion in *Dallas*. We find the quote useful, but for a different reason. We observe that in the instant case,

> [i]t is clear that the trial court had enough information at its disposal to conduct the balancing test and make an informed ruling. It had the opening statement of the petitioner, the express statements of the State that it intended to use the prior convictions to impeach the petitioner, the knowledge that the prior convictions were similar to, if not the same, as the charges the petitioner was currently facing, and the completed testimony of one of the officers. . . . [I]n this case the fact that the prior convictions mirrored the current drug-

---

[10] The Dissent claims that "Mr. Burnside could have testified to any number of defense theories," rendering his testimony unpredictable. The Dissent entertains these possible defense theories and the possible accompanying testimony just as the *Dallas* court entertained the "plausibility" of several scenarios in which the defendant in that case could have testified inconsistent to his theory of defense. *Dallas*, 587, 993 A.2d at 666. The Dissent, however, overlooks what precipitated the *Dallas* court to explore these plausible scenarios. In *Dallas*, the trial judge's on the record statement regarding the uncertainty of the defendant's testimony is what served as the impetus for the *Dallas* court's presumption "that the trial court, not unreasonably envisioned that, had Petitioner taken the stand, he might not have confined his testimony" to the theory of defense established in his counsel's opening statement. *Id.* at 587, 993 A.2d at 665.

related charges made the introduction of such evidence before a jury highly prejudicial.

*Id.* at 600, 993 A.2d at 673 (Bell, C.J., dissenting). Similarly, we agree that the entry of "the prior conviction[] [that] mirrored the current drug-related charge[] made the introduction of such evidence before a jury highly prejudicial." *Id.* (Bell, C.J., dissenting). Also, we find instructive Chief Judge Bell's reasoning in his dissent:

> If needing to hear the testimony itself is what is required, there simply can never be a pre-testimonial ruling that would inform the decision to testify or remain silent. There would be no opportunity, thus no ability, for the petitioner to make an informed decision; he could only learn whether his prior convictions could be used to impeach his testimony if he testified. Such a hard and fast rule is productive of a choice that is the antithesis of the knowing and intelligent decision-making our right to testify jurisprudence contemplates.

*Id.* at 598–99, 993 A.2d at 672. Moreover, Petitioner was explicit as to his reason not to testify; he did not want to be judged in this case by his past conviction, because to do so would be prejudicial. In other words, he did not want to risk being prejudiced by his prior conviction and believed that making an uninformed election to testify was a risk in and of itself, one that he was not willing to take.

We pointed out in *Dallas* that there are situations where the trial "court need not hear the defendant's testimony to know how to rule on a motion to exclude . . . proposed impeachment evidence." *Id.* at 586, 993 A.2d at 665. Notably, we said that a "trial court . . . can recognize when the risk of unfair prejudice of the proposed impeachment evidence far outweighs its probative value, no matter how the defendant might testify." *Id.* At bottom, we accepted the proposition that it should be a *rare* occurrence that the trial judge defers his or her ruling on the admissibility of prior convictions as impeachment evidence.

20

In the instant case, there is nothing in the record, and the State does not offer any support, to suggests that this was a "rare" circumstance that required the judge to delay his ruling. The trial judge acknowledged that determining the admissibility of Mr. Burnside's prior conviction involved a "balancing test," but did not believe that he needed to "make the balancing decision before [Mr. Burnside] testified." The trial judge stated that Mr. Burnside had to make the "decision whether he want[ed] to testify or [did not] want to testify. If he t[ook] the stand and the State attempt[ed] to bring up the prior conviction then [they would] have a determination at that time, but [he would] not . . . preliminarily make that decision."

Based upon the trial judge's rationale for requiring the defendant to testify first, it appears he was not familiar with our decision in *Dallas*. Apparently, the trial judge did not know he had the discretion to rule without hearing Mr. Burnside's direct testimony. *See id.* His decision to delay his ruling was entirely inconsistent with this Court's acknowledgment that "it is not realistic or necessary for a defendant to have to wait until he is on the stand to find out whether he will be impeached with prior crime evidence." *Id.* (internal quotation marks omitted) (citing *State v. McClure*, 692 P.2d 579, 583 (Or. 1984)). Given the facts developed in this record, it was an abuse of discretion to defer ruling on the motion until after the defendant testified. Furthermore, the trial judge's statement ignores what we acknowledged in *Dallas*: that a trial court "should, when feasible, make reasonable efforts to accommodate a defendant by ruling in advance on the admissibility of a criminal record so that [the defendant] can make an *informed* decision whether or not to testify." *Id.* at 585, 993 A.2d at 664 (emphasis added) (quoting *United States v. Oakes*, 565 F.2d

21

170, 171 (1st Cir. 1977). Surely, a trial judge ruling on the admissibility of a prior conviction would inform a defendant's decision to testify or remain silent.

Although a reviewing court cannot generally assume that an adverse ruling, or the lack of a ruling, is what "motivated a defendant's decision not to testify," that is not the case here. *Luce v. U.S.*, 469 U.S. 38, 42, 105 S. Ct. 460, 463, 83 L. Ed. 2d 443 (internal citation omitted) (internal quotation marks omitted). When asked if he elected to testify, Mr. Burnside stated, "I choose to exercise my Fifth Amendment right to remain silent and not testify due to his Honor's previous objections for anything I say on our behalf[11] . . . . I won't get no [sic] justice." Mr. Burnside's statement epitomizes what this Court, in *Dallas*, referred to as the "chill[ing] [of the] right to make an election." *Id.* at 588, 993 A.2d at 666. The trial judge's statement that he was not going to preliminarily make a decision would lead a reasonable mind to conclude, just as it led Mr. Burnside's counsel to conclude, that the trial judge's declination was final and the offering of a proffer or any additional information to inform a pre-election balancing test would have been futile.

It is our view that the trial court had enough information to reasonably conduct a balancing test prior to Mr. Burnside's election whether to testify. It had adequate means of assessing how Mr. Burnside would likely testify, given the clear theory of the defense.

---

[11] Although Mr. Burnside referred to the trial court's trial decisions as objections, when reviewing the record, it becomes apparent that Mr. Burnside was referring to the trial court's overruling of defense counsel's objections to the State's introduction of pending criminal charges during the impeachment of the Defense's witnesses. Given the trial court's failure to comply with Maryland Rule 5-608(b)—that on which the Court of Special Appeals appropriately remarked as erroneous—it is not surprising that Mr. Burnside believed that he would not receive justice if he elected to testify.

Additionally, the trial court was aware that Mr. Burnside felt prejudiced by the delay in the ruling. *Cf. Dallas*, 413 Md. at 588, 993 A.2d at 666 (where this Court observed that "Petitioner did not complain at the time that the court's delay chilled his right to make an election. Had Petitioner done so, the trial court might well have opted to provide an *in limine* ruling before Petitioner made his election.").

Finally, the trial court had before it three well-established principles that suggested that such a ruling was necessary before Mr. Burnside elected to testify or not. The court was aware of, first, a defendant's constitutional right to testify. Second, the court had a clear understanding that

> [w]here the crime for which the defendant is on trial is identical or similar to the crime for which he has been previously convicted the danger is greater, as the jury may conclude that because he did it before he most likely has done it again. The net effect of such evidence is often to discourage the defendant from taking the stand.

*Cure v. State*, 421 Md. 300, 330, 26 A.3d 899, 917 (2011) (quoting *Ricketts v. State*, 291 Md. 701, 703, 436 A.2d 906, 908 (1981). Lastly, the trial court had guidance from this Court stating that "[m]any are the times when a trial court *can* and, therefore, *should* decide a motion *in limine* involving a Rule 5-609 issue before the defendant makes the election." *Dallas*, 413 Md. at 586, 993 A.2d at 665 (emphasis added).[12]

---

[12] If the trial judge had expounded on his reason for the delay and chose to delay his ruling due to a lack of clarity regarding the theory of the defense, Mr. Burnside's defense counsel certainly could have offered a proffer to inform the trial judge's balancing test. In *Dallas* we stated that:

> [T]he best practice is for trial judges to accept a proffer of the defendant's testimony and make an *in limine* ruling based on it. The ruling should be accompanied by an express caution to the defendant that, if the defendant's direct testimony departs from the proffer in a way that changes the

We take no issue with our decision in *Dallas* and see no need to modify it given that our holding today remains consistent with our acknowledgment "that, although there may be circumstances in which the court may have reason to defer the ruling, 'this *should* be a rare occurrence.'" *Id.* at 586, 993 A.2d at 665 (emphasis added) (quoting *State v. McClure*, 692 P.2d 579, 583 (Or. 1984)). Specifically, we do not seek to expand the holding of *Dallas* to such an extent that "there may never be a set of circumstances in which a trial judge will feel confident in deferring a Md. Rule 5-609 balancing test until after the defendant has testified[,]" as the concurring and dissenting opinion suggests. *See* Slip. Op. at 11. *Dallas* anticipated *many* circumstances in which a trial court should decide a Rule 5-609 motion prior to a defendant's election to testify. That the *Dallas* court enumerated three such scenarios when the trial court should rule on such a motion prior to the defendant's testimony did not confine the realm of possible scenarios to those enumerated. The facts of this case present one such scenario that was not among the enumerated list in *Dallas*. With Mr. Burnside having been previously convicted of a similar crime for which he stood trial and with his theory of defense clear, the trial judge did not need to wait to hear Mr. Burnside's testimony before ruling on the Rule 5-609 motion.

---

probative/prejudice balance scrutiny required by Rule 5–609(a), then a final ruling on the admissibility of the impeachment evidence might well be different.

413 Md. 569, 586, 993 A.2d 655, 665 n. 11. We are in no way suggesting that trial courts should *sua sponte* request proffers; instead, we are merely highlighting that if a trial court expresses uncertainty as the reason for the delay, the defendant is put on notice that a proffer may resolve the uncertainty. Whether the defense's trial tactics involves the offer of a proffer is for the defense to decide, not for a trial judge to *sua sponte* request.

Our opinion today in no way quells the possibility that there are circumstances in which the trial judge may appropriately choose to defer conducting the balancing test until after the defendant testifies. In the rare instance when a judge defers his ruling on the defendant's Rule 5-609 motion, before deferring the ruling, the trial judge should first assess all reasonable efforts to accommodate a defendant by making an advance ruling on the admissibility of a defendant's criminal record to enable the defendant to make an informed decision whether to testify or not. This assessment, whether it ultimately leads to an advance ruling or a deferred ruling, should appear on the record. *See Jackson v. State*, 340 Md. 705, 717, 668 A.2d 8, 14 ("Although trial judges are not obliged to detail every step of their logic, we urge trial judges when discharging this duty to place the specific circumstances and factors critical to the decision on the record.") (internal citations omitted).

We hold that in light of our case law, the facts and circumstances of Mr. Burnside's case, and the relevant constitutional guideposts, the trial court failed to exercise its discretion when it declined to conduct a Rule 5-609 balancing test prior to Mr. Burnside's election to not testify. The trial court's failure to exercise its discretion constituted an abuse of discretion. Although we give great deference to trial judges acting within their discretion, "[d]eference is different from unquestioning acceptance." *Trump v. Hawaii*, -- U.S. -- (2018) (Sotomayor, J., dissenting). We, therefore, neither permit that discretion to extend beyond the limits of our case law nor do we allow that discretion to trespass into the domain of a defendant's right to make an informed decision to testify or remain silent.

Accordingly, we reverse the judgment of the Court of Special Appeals and direct the remand of this case for a new trial consistent with this Opinion.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH THE DIRECTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR WASHINGTON COUNTY FOR A NEW TRIAL; COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY WASHINGTON COUNTY.**

Circuit Court for Washington County
Case No. 21-K-16-052453
Argued: May 2, 2018

IN THE COURT OF APPEALS
OF MARYLAND

No. 71

September Term, 2017

---

CARL FRANKLIN BURNSIDE

v.

STATE OF MARYLAND

---

Barbera, C.J.
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.

---

Concurring and Dissenting Opinion by Getty,
J., which Watts, J. joins.

---

Filed: July 11, 2018

I agree with the Majority that the issue is preserved for our review. Specifically, Maryland Rule 4-323(c) requires only that a party make the court aware of the desired action when the ruling is one other than admitting evidence. *See Reed v. State*, 353 Md. 628, 640 (1999) (quoting *Prout v. State*, 311 Md. 348, 356 (1988)). The defense counsel in the case *sub judice* clearly stated "I would just ask [] if the Court would conduct a balancing test . . . my fear would be that if the Court were to allow that, the State to impeach him with a prior conviction that the jury would base their decision solely on his previous conviction and not based upon the evidence presented here today." This undoubtedly made the trial court aware of the action the defendant desired: that the trial judge conduct a Maryland Rule 5-609 ("Md. Rule 5-609" or "Rule 5-609") balancing test before the defendant elected to testify. Therefore, I concur on this issue.

I write separately because I respectfully disagree with the Majority's assessment that the circumstances of this case required the trial judge to rule on the admissibility of the prior conviction impeachment evidence by conducting a Rule 5-609 balancing test before the defendant elected to testify. The Majority's holding improperly expands the circumstances for conducting an *in limine* balancing test and effectively requires a trial judge to *sua sponte* request a proffer of defendant's testimony or to speculate about the substance of the defendant's ungiven testimony based on a general theory of the case in order to properly exercise his or her discretion. This Court's holding in *Dallas v. State*, 413 Md. 569 (2010) compels these conclusions.

In *Dallas*, this Court directly addressed the question of whether a trial court may defer its ruling on a motion *in limine* to exclude prior convictions impeachment evidence

until after the defendant testified.  413 Md. at 585–86.  Contrary to the outcome here, this Court held that the trial court did not abuse its discretion in deferring its Md. Rule 5-609 balancing test pursuant to the motion *in limine* until after the Court heard the defendant's testimony.  Specifically, the petitioner in *Dallas* was charged with possession of cocaine with intent to distribute and related offenses.  *Id.* at 571.  The petitioner filed a motion *in limine*, seeking a ruling from the trial judge that the State could not introduce evidence of petitioner's two prior drug convictions as impeachment evidence pursuant to the balancing test under Md. Rule 5-609.  *Id.*  The trial court decided to wait to rule on the admissibility of the similar prior convictions impeachment evidence until after the petitioner testified. *Id.* at 573.  From the beginning of the trial the petitioner highlighted his ultimate argument; specifically, "[p]etitioner made clear during his opening statement his theory of defense against the felony charge."  *Id.*  Nevertheless, the trial judge ruled at the beginning of the petitioner's case in chief that the evidence of the prior convictions was admissible for impeachment evidence because they were relevant to petitioner's credibility.  *Id.*  After a recess, however, the trial judge rescinded his ruling, reasoning that he must consider the petitioner's testimony before conducting the balancing test.  *Id.* at 573-74.  Although the State subsequently suggested that the petitioner be able to proffer his testimony, the trial judge rejected that proposal.  *Id.* at 575.

On appeal, the petitioner argued that the trial court abused its discretion when it deferred its ruling on the admissibility of the impeachment evidence in large part because this type of determination includes a constitutional dimension related to a defendant's Fifth Amendment right to testify.  *Id.* at 576-84.  Initially, this Court held that "a trial court's

2

decision to await a defendant's testimony before deciding whether to allow proposed prior conviction impeachment evidence does not impermissibly chill the defendant's right to testify. Therefore, a decision to defer ruling does not present a question of constitutional dimension." *Id.* at 584. As such, the *Dallas* Court distinguished its case from *Luce v. United States,* 469 U.S. 38 (1984).

In discussing whether the trial judge failed to exercise his discretion under the mandates of Md. Rule 5-609 before the petitioner elected to testify, the *Dallas* Court reasoned that the rule "requires the trial court . . . to balance the probative value of prior conviction evidence against the danger of unfair prejudice to the defendant. For this reason, **the trial court may deem it necessary in a given case to defer ruling on the admission (or exclusion) of prior crimes impeachment evidence until after the court hears the defendant's testimony.**" *Id.* at 585 (emphasis added).

However, we then qualified this holding by stating:

> That said, trial courts should rule on **motions** *in limine* as early as practicable, which often is before the defendant elects whether to testify or remain silent.
>
> Many are the times when a trial court can and, therefore, should decide a motion *in limine* involving a Rule 5–609 issue before the defendant makes the election. **For example, when it is clear that a prior conviction is ineligible for impeachment under Rule 5–609, the court need not hear the defendant's testimony to know how to rule on a motion to exclude that proposed impeachment evidence. Similarly, the trial court certainly can recognize when the risk of unfair prejudice of the proposed impeachment evidence far outweighs its probative value, no matter how the defendant might testify. Moreover, the court may be satisfied that it has a sufficient basis upon which to make an** *in limine* **ruling without hearing the defendant's direct testimony if the court has learned, through other means, how the defendant is likely to testify. For example,**

**a court may hear admissions that the defense makes during the defense's opening statement, or the court may accept a proffer of the defendant's direct testimony.** *In any of these circumstances***, fairness to the defendant augurs in favor of the trial court's ruling on the motion before the defendant elects whether to testify or remain silent**.

*Id.* at 585–86 (emphasis added). The *Dallas* Court, therefore recognized certain circumstances in which a trial judge should conduct a Md. Rule 5-609 balancing test before the defendant elects to testify. *Id.* These circumstances include: (1) when the trial court determines that the prior convictions are inadmissible under Md. Rule 5-609(a)(1) or (b); (2) when the trial judge concludes that the impeachment evidence is so prejudicial that the defendant's testimony would not alter the trial judge's ruling; (3) when a party files a motion *in limine* requesting the court to conduct the balancing test before an election to testify supplemented with admissions during opening statements, which provided the trial judge with sufficient information as to how the defendant would likely testify; or (4) when a party files a motion *in limine* requesting the court to conduct the balancing test before an election to testify supplemented with a proffer of the defendant's testimony, providing the trial judge with sufficient information regarding the defendant's testimony.

The differences between this case and the circumstances identified in *Dallas* are several and significant. First, Mr. Burnside's prior conviction was not inadmissible under Maryland Rule 5-609(a)(1) or (b). Under Maryland Rule 5-609(a)(1), to be admissible, a witness's prior conviction must be for "an infamous crime or other crime relevant to the witness's credibility[.]" All felonies are infamous crimes. *See Taylor v. State*, 407 Md. 137, 154 (2009). Here, Mr. Burnside's prior conviction was for possession of a controlled

dangerous substance with the intent to distribute. Although Mr. Burnside's counsel did not state which controlled dangerous substance Mr. Burnside's prior conviction was for, possession of any controlled dangerous substance with the intent to distribute is a felony. *See* Md. Code Ann., Crim. Law (2002, 2012 Repl. Vol.) §§ 5-607(a), 5-608(a), 5-608.1(b), 5-609(a). Thus, Mr. Burnside's prior conviction was not inadmissible under Maryland Rule 5-609(a)(1). Additionally, Mr. Burnside's prior conviction occurred in 2012, and was thus well within the fifteen-year time limitation under Maryland Rule 5-609(b).

The instant circumstances also do not give rise to the conclusion that the danger of unfair prejudice substantially outweighed the probative value of Mr. Burnside's prior conviction regardless of how he testified. Had Mr. Burnside elected to testify, his credibility would have been a crucial matter for the jury to determine, and evidence that he was a convicted felon would have been a highly probative piece of impeachment evidence. To be sure, evidence that Mr. Burnside had been convicted of the same type of crime for which he was on trial, *i.e.*, possession of a controlled dangerous substance with the intent to distribute, could have caused a danger of unfair prejudice. This case was not, however, a scenario in which it was immediately clear that the danger of unfair prejudice would "far outweigh[ the] probative value[,]" as would be the case where a defendant who is on trial for shoplifting has a prior conviction for rape. *Dallas*, 413 Md. at 586 & n.10.

Furthermore, the defendant in the case *sub judice* did not file a pre-trial motion *in limine* requesting the trial judge conduct a balancing test under Md. Rule 5-609. *See id.* at 573 ("Petitioner filed a pre-trial motion *in limine* . . ."). Instead, the defense counsel for Mr. Burnside first asked the trial judge to exclude the prior conviction impeachment

5

evidence at the exact same time when counsel was qualifying his client on his fifth amendment right to testify. As such, the trial judge first became aware of a possible Rule 5-609 balancing test immediately before the defendant was deciding whether or not to take the stand. Moreover, there is nothing in the record in the case *sub judice* that shows the trial court heard "admissions" during the defense's opening statement. *See id.* at 585–86 ("For example, a court may hear admissions that the defense makes during the defense's opening statement . . ."). Counsel for Mr. Burnside also did not request the trial court accept a proffer of the defendant's testimony for purposes of conducting a Md. Rule 5-609 balancing test before Mr. Burnside elected whether or not to testify. This departs far from the third and fourth circumstances identified in *Dallas*, which anticipated that a trial judge would be viewing the whole trial, including opening statement and any proffer, through the lens of a Md. Rule 5-609 motion *in limine*. *See generally id.*

But most importantly, the circuit court had no other reliable means for "learn[ing] . . . how [Mr. Burnside was] likely to testify." *Id.* at 586. During Mr. Burnside's opening statement, aside from mentioning that the State charged Nicholas Vincent Knight (the Toyota's driver) with the same crimes as Mr. Burnside, his counsel did not state or imply that Mr. Knight was a drug dealer. During Mr. Knight's cross-examination, Mr. Burnside's counsel asked him whether he had ever sold heroin or cocaine, and whether he knew Mr. Burnside's three witnesses: Jason Tyler Marshall, William Joseph Bucklew, and Scott Dorman. In each instance, Mr. Knight answered in the negative. Mr. Marshall testified that he had bought heroin, and possibly cocaine, from Mr. Knight; Mr. Bucklew testified

6

that he had bought heroin from Mr. Knight; and Mr. Dorman testified that he had bought heroin and cocaine from Mr. Knight.

Under these circumstances, contrary to Mr. Burnside's contention, it was not "very [] easy to predict" that he would have testified that Mr. Knight was a drug dealer, and that the cocaine and heroin in the Toyota belonged to Mr. Knight. It would have been entirely consistent with Mr. Burnside's opening statement, as well as his witnesses' testimony, for him to simply testify that he did not know who owned the cocaine and heroin, without testifying that Mr. Knight was a drug dealer. Alternatively, Mr. Burnside could have conceded that the cocaine and heroin belonged to him, but denied that he intended to distribute them. *Cf. id.* at 573 (During the defendant's opening statement, his counsel acknowledged that he possessed cocaine and marijuana, but denied that he intended to distribute the cocaine.).

In sum, regardless of whether the trial judge expressly observed as much, Mr. Burnside could have testified to any number of defense theories, including: (1) that Mr. Knight was a drug dealer who owned the cocaine and heroin; (2) that Mr. Burnside did not know who owned the cocaine and heroin; or (3) that Mr. Burnside owned, but did not intend to distribute, the cocaine and heroin. Under any of these possible scenarios, Mr. Burnside could have also testified that he had never distributed illegal drugs before. In that case, his prior conviction for possession of a controlled dangerous substance with the intent to distribute would have likely been admissible. *Cf. id.* at 587 (If the defendant "testified that he had never before distributed illegal drugs . . . , then the [trial] court might have decided that the State should be permitted to impeach him with [his] prior convictions" for

7

distribution of cocaine and possession of cocaine with the intent to distribute.). Just as we explained in *Dallas*, "the trial court, not unreasonably envisioned that, had Petitioner taken the stand, he might not have confined his testimony" to the theory of defense established in his counsel's opening statement, the trial judge in this case was presented with the same scenario. *Id.*

Therefore, the case *sub judice* did not include any of the circumstances that this Court found in *Dallas* to weigh in favor of a Rule 5-609 balancing test before the defendant elected to testify. *See id.* The trial judge in this case used his discretion to defer ruling, likely recognizing that all he had heard up to the point of Mr. Burnside's election not to testify was a general theory of defense. The trial judge had no means of determining the parameters or the extent of the defendant's testimony, making it impractical for the trial court to conduct a Md. Rule 5-609 balancing test that requires the trial judge to consider the "the impeachment value of the prior crime" and the "importance of the defendant's testimony" as part of the five factor test identified by the Majority. *Jackson v. State*, 340 Md. 705, 717 (1995). *See also Cure v. State*, 421 Md. 300, 325 (2011).

Instead, this case is on all fours with the ultimate holding in *Dallas*. Just as it was "plausibl[e]" that the defendant in *Dallas* could have testified that he had never distributed illegal drugs, it is equally plausible that Mr. Burnside could have done the same. Like the defendant in *Dallas*, Mr. Burnside "did not complain at the time that the [circuit] court's delay [in determining whether his prior conviction was admissible] chilled his right to make an election" as to whether to testify. *Dallas*, 413 Md. at 587, 588. And, as in *Dallas*, because the circuit "court could not be certain what Mr. Burnside's testimony would be

8

until the circuit court heard it . . . , the circuit court was not required to" hear a proffer of his testimony. *Id.* at 569, 587 (cleaned up).

Although the trial judge did not explicitly detail why he determined that he needed to hear testimony before conducting a balancing test, the record need only show that the discretion was in fact exercised. *See State v. Woodland*, 337 Md. 519, 526 (1995) ("Although the trial judge did not expressly describe the considerations that led her to conclude that [the defendant's] drug conviction was admissible to impeach, we find that she engaged in the necessary balancing before admitting the evidence. There is no requirement that the trial court's exercise of discretion be detailed for the record, so long as the record reflects that the discretion was in fact exercised."). Here, the trial judge specifically announced, "It is a balancing test but I don't think I need to make the balancing decision before he testifies . . . I'm not going to preliminarily make that decision," indicating that he was using his discretion to defer conducting a Md. Rule 5-609 balancing test in order to hear the defendant's proffered testimony.

Even if the Majority's intention is to add to the circumstances weighing in favor of requiring a Md. Rule 5-609 balancing test before a defendant's election to testify that we identified in *Dallas*, then this raises crucial concerns about the Majority's apparent requirement for the trial court to act *sua sponte*. At no point did Mr. Burnside's counsel request that the trial judge hear a proffer of the defendant's testimony, which would likely have provided the trial court with sufficient information to conduct the balancing test prior to Mr. Burnside's election. Furthermore, neither the defense counsel nor the State requested that the trial judge hold a hearing to consider the defendant's request to conduct

9

a Rule 5-609 balancing test before Mr. Burnside took the stand in his own defense. Therefore, it is unclear under the Majority's reasoning whether a defense attorney even has to request a pretrial ruling as to the admissibility of impeachment evidence under Md. Rule 5-609 or whether the trial court is required to act *sua sponte* where it "ha[s] enough information to reasonably conduct a balancing test[.]" Maj. Slip Op. at 22. Under the Majority's reasoning, there may never be a set of circumstances in which a trial judge will feel confident in deferring a Md. Rule 5-609 balancing test until after the defendant has testified. However, this directly conflicts with this Court's holding in *Dallas*: "the trial court may deem it necessary in a given case to defer ruling on the admission (or exclusion) of prior crimes impeachment evidence until after the court hears the defendant's testimony." *Id.* at 585

If any of the factual circumstances identified in *Dallas* had occurred in the case below, the Majority's reasoning might be correct. However, by simply holding that the trial judge abused his discretion by waiting to conduct the balancing test given the "facts and circumstances of Mr. Burnside's case," this Court is effectively requiring the trial judge to *sua sponte* request a proffer of the defendant's testimony or otherwise make a determination as to admissibility of evidence under Md. Rule 5-609 without so much as a request to do so from the defendant. Maj. Slip Op. at 23. Maryland Courts have previously recognized that there must be sufficient information to trigger a trial judge's *sua sponte* duty, especially because "[i]t is not for trial judges, *sua sponte,* to second-guess trial tactics, however ill-advised they might seem to the judge." *Nelson v. State*, 137 Md. App. 402, 423 n. 5 (2001). *See also Gregg v. State*, 377 Md. 515, 545 (2003) (holding that the

10

limited examples of a defendant's erratic behavior fell short of the threshold for a judge's *sua sponte* duty to evaluate the defendant's competency to stand trial).

In this case, the Majority recognizes that all the trial judge had before him was a general theory of defense, which was provided by way of an opening statement and three defense witnesses. The trial judge was not in a position to guess what Mr. Burnside's testimony might be nor was he required to act *sua sponte* when the defense counsel failed to request that the trial judge accept a proffer of the defendant's testimony. *See Nelson*, 137 Md. App. at 423 n. 5. The general theory of defense that the trial court had before it in this case was certainly insufficient to trigger a duty for the trial court to proceed. *See generally Gregg v. State*, 377 Md. at 545.

Guided by *Dallas*, I would hold that the circuit court did not abuse its discretion in declining to determine whether Mr. Burnside's prior conviction was admissible before he elected whether to testify because none of the circumstances that this Court identified in *Dallas* are present here. The trial judge was not provided with a pre-trial motion *in limine*, defense counsel did not make a proffer of the defendant's testimony, and the trial court had limited information as to the defendant's testimony at the time the defense requested the balancing test. *See Dallas*, 413 Md. at 585-86. As such, nothing in the circumstances of this case should make this Court second-guess the trial judge's decision that he needed to consider the defendant's testimony before conducting the Rule 5-609 balancing test.

The Majority's holding today is not consistent with this Court's well-reasoned holding in *Dallas*. Although the Majority contends otherwise, the Majority also effectively requires trial judges to *sua sponte* request a proffer of the defendant's testimony or *sua*

*sponte* hold a hearing on the balancing arguments in order to avoid being reversed by an appellate court. That was not this Court's intention in *Dallas*, in which we identified *specific* circumstances that weigh in favor of a trial court conducting a Rule 5-609 balancing test before the defendant elects to testify. 413 Md. at 586. For these reasons, I would hold that the trial judge properly exercised his discretion in deciding to conduct the Rule 5-609 balancing test after having a chance to hear and consider Mr. Burnside's testimony. Accordingly, I would affirm the sound reasoning of the Court of Special Appeals.

Judge Watts has authorized me to state that she joins this concurring and dissenting opinion.